SIRI & GLIMSTAD LLP
Mason Barney (*pro hac vice* forthcoming)
mbarney@sirillp.com
Sonal Jain (*pro hac vice* forthcoming)
sjain@sirillp.com
200 Park Avenue
Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967

Nicholas Armer (Bar No. 330577)
narmer@sirillp.com
700 S Flower Street
Suite 1000
Los Angeles, CA 90017
Telephone: 212-532-1091
Facsimile: 646-417-5967

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM FISHER, ASHLEY CARTER, CHRISTINA LOPEZ, RACHEL BARNETT, LUCIA FLORES, TIFFANY COLE, DENISE OKEEFE, BAYLEE MESTAZ, JOHN COOPER, CRYSTAL HARMON, MICHELLE DURDEN, KAREN BENOIT, AND CASSIE COWEN, individually and on behalf of others similarly situated, | Case No. |
| | CLASS ACTION COMPLAINT FOR DAMAGES AND RELIEF AND DEMAND FOR JURY TRIAL |
| Plaintiff, | COMPLAINT FOR |
| v. | 1. Negligence; |
| | 2. Negligence Per Se; |
| ROBINHOOD MARKETS, INC.; ROBINHOOD CRYPTO, LLC; | 3. Breach of Contract; |
| | 4. Breach of Implied Contract; |
| | 5. Unjust Enrichment; |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ROBINHOOD FINANCIAL LLC;
ROBINHOOD SECURTIIES, LLC, and
DOES 1-10,

Defendants.

6.  Declaratory judgment;

7.  Violation of California Unfair Competition Law;

8.  Violation of the Illinois Consumer Fraud and Deceptive Practices Act;

9.   Violation of the New York General Business Law;

10.  Violation of the Indiana Deceptive Consumer Sales Act;

11.  Violation of the Utah Consumer Sales Practices Act;

12.  Violation of South Carolina Unfair Trae Practices Act;

13.  Violation of Georgia Fair Business Practices Act.

ii

Plaintiffs ADAM FISHER, ASHLEY CARTER, CHRISTINA LOPEZ, RACHEL BARNETT, LUCIA FLORES, TIFFANY COLE, DENISE OKEEFE, BAYLEE MESTAZ, JOHN COOPER, CRYSTAL HARMON, MICHELLE DURDEN, KAREN BENOIT, and CASSIE COWEN (each a "Plaintiff" and collectively "Plaintiffs") individually and on behalf of the Classes defined below of similarly situated persons, alleges the following against Defendants ROBINHOOD MARKETS, INC., ROBINHOOD CRYPTO, LLC, ROBINHOOD FINANCIAL LLC, and ROBINHOOD SECURITIES, LLC (collectively, "Robinhood" or "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

## I.  **INTRODUCTION**

1.     Plaintiffs bring this class action against Robinhood for its failure to properly secure and safeguard Plaintiffs' and other similarly situated Robinhood customers' personal information from hackers.

2.     Robinhood is a financial services company that allows customers to trade securities on a mobile application.

3.     On November 3, 2021, hackers gained access to the personally identifiable information ("PII") of over 7 million Robinhood customers (the "Data Breach"), including full names, email addresses, dates of birth, zip codes, and other PII.

4.     Thereafter, on November 8, 2021, Robinhood announced the Data Breach. At least since that date, Robinhood has maintained a blog post on its website titled, "Robinhood Announces Data Security Incident." The blog post states, in part, "Late in the evening of November 3, we experienced a data security incident. An unauthorized third party obtained access to a limited amount of personal information for a portion of our customers."

5.     Robinhood customers' PII is currently up for sale on the dark web. Hackers offer for sale the unencrypted, unredacted, stolen PII to criminals. Because of Robinhood's Data Breach, customers' PII is still available on the dark web for criminals to access and abuse. As a result, Robinhood's customers face a lifetime risk of identity theft.

6.     Clearly, Robinhood failed to safeguard Plaintiffs' and other customers' PII.

7.     Plaintiffs and similarly situated Robinhood customers ("Class Members") have suffered injury because of Robinhood's conduct. The injuries suffered by Plaintiffs and the proposed Classes as a direct result of the Data Breach include, *inter alia*:

    a.  Theft of their PII;

    b.  Costs associated with the detection and prevention of identity theft;

    c.  Costs associated with time spent and the loss of productivity from taking time to address and attempting to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach, and the stress, nuisance and annoyance of dealing with all issues resulting from the Data Breach;

    d.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals, which has already been misused via the sale of Plaintiffs' and the Class Members' information on the Internet black market;

    e.  Damages to and diminution in value of their PII entrusted to Robinhood for the sole purpose of making purchases through Robinhood and with the mutual understanding that Robinhood

would safeguard Plaintiffs' and the Class Members' data against theft and not allow access to and misuse of their PII by others;

f.   Continued risk to their PII, which remains in the possession of Robinhood, and which is subject to further breaches so long as Robinhood continues to fail to undertake appropriate and adequate measures to protect Plaintiffs' and the Class Members' data in its possession.

8.    Plaintiffs bring this action on behalf of all persons whose PII was compromised due to Robinhood's failure to: (i) adequately protect its users' PII, (ii) warn users of its inadequate information security practices, and (iii) effectively monitor its websites and e-commerce platforms for security vulnerabilities and incidents. Robinhood's conduct amounts to negligence and violates federal and state statutes.

## II.    JURISDICTION AND VENUE

9.    This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. At least one member of the class is a citizen of a state different from Robinhood.

10.    This Court has personal jurisdiction over Robinhood because it regularly conducts business in California, has sufficient minimum contacts in California, including its principal place of business, and intentionally avails itself of this jurisdiction by marketing and selling products and services in California.

11.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because a substantial part of the events and omissions giving rise to this action occurred in this District, including (upon information and belief) the Data Breach. Robinhood caused harm to Plaintiffs and the Class Members through its actions in this District.

### III.   PARTIES

12.     Plaintiff Adam Fisher is a citizen of California residing in Los Angeles. Plaintiff Fisher is a Robinhood customer. On November 8, 2021, he received an email from Robinhood informing him of the Data Breach and that his PII had been stolen.

13.     Plaintiff Ashley Carter is a citizen of Illinois residing in Chicago. Plaintiff Carter is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

14.     Plaintiff Christina Lopez is a citizen of Illinois residing in Chicago. Plaintiff Lopez is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

15.     Plaintiff Rachel Barnett is a citizen of Illinois residing in Benton. Plaintiff Barnett is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

16.     Plaintiff Lucia Flores is a citizen of Illinois residing in Chicago. Plaintiff Flores is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

17.     Plaintiff Tiffany Cole is a citizen of Indiana residing in New Castle. Plaintiff Cole is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

18.     Plaintiff Denise Okeefe is a citizen of New York residing in Ontario. Plaintiff Okeefe is a Robinhood customer. On November 8, 2021, she received an

CLASS ACTION COMPLAINT

email from Robinhood informing her of the Data Breach and that her PII had been stolen.

19.     Plaintiff Baylee Mestaz is a citizen of Utah residing in Ogden. Plaintiff Mestaz is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

20.     Plaintiff John Cooper is a citizen of South Carolina residing in Sumter. Plaintiff Cooper is a Robinhood customer. On November 8, 2021, he received an email from Robinhood informing him of the Data Breach and that his PII had been stolen.

21.     Plaintiff Crystal Harmon is a citizen of Georgia residing in Savannah. Plaintiff Harmon is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

22.     Plaintiff Michelle Durden is a citizen of Virginia residing in Chesapeake. Plaintiff Durden is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

23.     Plaintiff Karen Benoit is a citizen of Massachusetts residing in Seekonk. Plaintiff Benoit is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

24.     Plaintiff Cassie Cowen is a citizen of Oklahoma residing in Pryor. Plaintiff Cowen is a Robinhood customer. On November 8, 2021, she received an email from Robinhood informing her of the Data Breach and that her PII had been stolen.

25.     Defendant Robinhood Markets, Inc. is a publicly-traded corporation organized under the laws of the State of Delaware, with a principal place of business

at 85 Willow Road, Menlo Park, CA, 94025. Defendant Robinhood Markets, Inc. advertises its services and sells products to customers nationwide through its website as well as through its mobile application.  Its website can be found at the robinhood.com URL, which is registered to Robinhood Markets, Inc. with a California address.[1]

26.    Defendant Robinhood Crypto, LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA, 94025.  Defendant Robinhood Crypto, LLC is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc.

27.    Defendant Robinhood Securities, LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA, 94025.  Defendant Robinhood Securities, LLC is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc.

28.    Defendant Robinhood Financial LLC is a limited liability company organized under the laws of the State of Delaware, with a principal place of business at 85 Willow Road, Menlo Park, CA, 94025.  Defendant Robinhood Financial LLC is a wholly-owned subsidiary of Defendant Robinhood Markets, Inc.

## IV.    FACTUAL ALLEGATIONS

### A. Background

29.    Robinhood is a financial services company that allows its more than 31 million customers to trade stocks, exchange-traded funds, and cryptocurrencies through its website and mobile app.

30.    Robinhood maintains office locations across the Unites States as well as in the United Kingdom.

---

[1] *See* https://www.whois.com/whois/robinhood.com (last visited on November 11, 2021).

### B. Robinhood's Personal Information Collection Practices

31.     Robinhood's website provides consumers with a privacy policy that informs them what PII will be collected and how that PII will be used (the "Privacy Policy"). The Privacy Policy states that, in the ordinary course of doing business with its customers, among other things, Robinhood collects a customer's name, date of birth, marital status, social security number, biometric identifiers, data from government-issued identification documents, email address, mailing address, telephone number, bank account and payment card details, information about income, account balances, financial transaction history, credit history, tax information, credit scores, username and password, knowledge assessment results, interests, preferences, feedback, survey responses, photos from mobile phone gallery or contacts stored in customer's mobile device or email accounts, usage information regarding the customer's use of the company's services, transactional information, GPS location of a customer's mobile device, and additional data provided to customers via focus groups, contests/sweepstakes, customer support, and other means. Robinhood's Privacy Policy makes clear that the company not only collects this information through its services, but it also collects information about its customers "from companies that we do business with, such as name, contact data, inferences about your preferences and attributes, as well as inferred fraud risk, from identity verification and fraud prevention partners." It further claims to collect customers "interactions with our social media platforms, and other information from publicly available sources, such as public websites."

32.     Relating to California customers, the Robinhood Privacy Policy states the following: "In the last 12 months, we collected the following categories of personal information subject to the [California Consumer Privacy Act]: identifiers (such as email address and IP address), approximate geolocation information,

7

Internet or other electronic network activity information (such as browsing history and related usage data), and inferences from your interactions with our platform."

33.   In its Privacy Policy, Robinhood promises not to disclose customers' information except for the following instances: (1) to authorized third-party vendors and service providers, (2) to companies in which customers' hold securities; (3) to Robinhood affiliates; (4) during substantial corporate transactions; (5) for legal purposes; or (6) with customers' consent.[2]

34.   Robinhood's website also promises customers that it employs "a number of industry-standard measures to protect your account and ensure your experience with us is safe and secure."[3]

## C. **The Data Breach**

35.   Despite Robinhood's representation that it had implemented a number of industry-standard measures, Robinhood failed to prioritize data and cyber security by adopting reasonable data and cyber security measures to prevent and detect the unauthorized access to Plaintiff's and the Class Members' PII.

36.   On November 8, 2021, Robinhood announced the Data Breach on its website.  In a blog post titled "Robinhood Announces Data Security Incident," Robinhood admitted the following:

> Late in the evening of November 3, we experienced a data security incident. An unauthorized third party obtained access to a limited amount of personal information for a portion of our customers. Based on our investigation, the attack has been contained and we believe that no Social Security numbers, bank account numbers, or debit card numbers were exposed and that there has been no financial loss to any customers as a result of the incident.

---

[2] *See* https://robinhood.com/us/en/support/articles/privacy-policy/ ("Robinhood Privacy Policy") (last visited on November 11, 2021).
[3] *See*  https://robinhood.com/us/en/support/articles/how-youre-protected/ ("How you're protected.") (last visited on November 11, 2021).

> The unauthorized party socially engineered a customer support employee by phone and obtained access to certain customer support systems. At this time, we understand that the unauthorized party obtained a list of email addresses for approximately five million people, and full names for a different group of approximately two million people. We also believe that for a more limited number of people—approximately 310 in total—additional personal information, including name, date of birth, and zip code, was exposed, with a subset of approximately 10 customers having more extensive account details revealed.

37.     On November 16, 2021, Robinhood updated its November 8, 2021 announcement to admit that further information, including customers' phone numbers and other undisclosed types of PII were exposed in the Data Breach.

38.     Indeed, it appears that Robinhood did not even implement basic security measures despite Robinhood's promises that it: (i) would not disclose consumers' PII; and (ii) would protect consumers' PII with adequate security measures.

39.     Robinhood customers' PII exposed in the Data Breach is currently up for sale on the dark web.[4] The seller indicated that he was expecting to sell the information for at least "five figures," and the information is "highly profitable in the right hands." As a result, Robinhood's customers face a lifetime risk of identity theft.

### D. FTC and NIST Guidelines on Protecting Customer Personal Information

40.     Recently, the Federal Trade Commission ("FTC") has held that the failure to employ reasonable measures to protect against unauthorized access to

---

[4]  *See FBI Hacker Offers to Sell Data Allegedly Stolen in Robinhood Breach*, SECURITY WEEK (Nov. 16, 2021), https://www.securityweek.com/fbi-hacker-offers-sell-data-allegedly-stolen-robinhood-breach (last visited on November 17, 2021).

9

confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the FTC Act (codified by 15 U.S.C. § 45).

41.     Under the FTC Act, Robinhood is prohibited from engaging in "unfair or deceptive acts or practices in or affecting commerce." The FTC has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

42.     Beginning in 2007, the FTC released a set of industry standards related to data security and the data security practices of businesses, called "Protecting Personal Information: A Guide for Businesses" (the "FTC Guide").[5] In 2011, this guidance was updated to include fundamental data security principles for businesses. In addition to the necessity to protect consumer data, the guide established that:

- Businesses should dispose of personal identifiable information that is no longer needed;
- Businesses should encrypt personal identifiable information and protected cardholder data stored on computer networks so that it is unreadable even if hackers are able to gain access to the information;
- Businesses should thoroughly understand the types of vulnerabilities on their network (of which malware on a point-of-sale system is one) and how to address said vulnerabilities;
- Businesses should implement protocols necessary to correct security breaches;
- Businesses should install intrusion detection systems to expose security breaches at the moment they occur;
- Businesses should install monitoring mechanisms to watch for massive troves of data being transmitted from their systems; and,

---

[5] *See FTC Unveils Practice Suggestions for Businesses on Safeguarding Personal Information*, FEDERAL TRADE COMM'N (Mar. 8, 2007), https://www.ftc.gov/news-events/press-releases/2007/03/ftc-unveils-practical-suggestions-businesses-safeguarding (last visited on November 11, 2021); *see also* Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business, Federal Trade Commission* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal information.pdf (updated FTC Guide) (last visited on November 11, 2021).

- Businesses should have an emergency plan prepared in response to a breach.

43.    On information and belief, Robinhood failed to adequately address the foregoing requirements in the FTC Guide.

44.    In 2015, the FTC supplemented the FTC Guide with a publication called "Start with Security" (the "Supplemented FTC Guide").[6] This supplement added further requirements for businesses that maintain customer data on their networks:

- Businesses should not keep personal identifiable information and protected cardholder data stored on their networks for any period longer than what is needed for authorization;
- Businesses should use industry-tested methods for data security; and,
- Businesses should be continuously monitoring for suspicious activity on their network.

45.    Again, Robinhood apparently failed to adequately address these requirements enumerated in the Supplemented FTC Guide.

46.    The FTC Guide is clear that businesses should, among other things: (1) protect the personal customer information they acquire; (2) properly dispose of personal information that is no longer needed; (3) encrypt information stored on computer networks; (4) understand their network's vulnerabilities; and (5) implement policies for installing vendor-approved patches to correct security vulnerabilities. The FTC guidance also recommends that businesses: (1) use an intrusion detection system to expose a breach as soon as it occurs; (2) monitor all incoming traffic for activity indicating that someone may be trying to penetrate the

---

[6] Fed. Trade Comm'n, Start with Security: A Guide for Business (June 2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited on November 11, 2021).

system; and (3) watch for large amounts of data being transmitted from the system.[7] Plaintiffs believe that Robinhood did not follow these recommendations, and as a result exposed hundreds of thousands of consumers to harm.

47.     Furthermore, the FTC has issued orders against businesses for failing to employ reasonable measures to safeguard customer data. The orders provide further public guidance to businesses concerning their data security obligations.

48.     Robinhood knew or should have known about its obligation to comply with the FTC Act, the FTC Guide, the Supplemented FTC Guide, and many other FTC pronouncements regarding data security.

49.     Thus, among other things, Robinhood's misconduct violated the FTC Act and the FTC's data security pronouncements, led to the Data Breach, and resulted in harm directly and proximately to Plaintiffs and the Class Members.

50.     Additionally, the National Institute of Standards and Technology ("NIST") provides basic network security guidance that enumerates steps to take to avoid cybersecurity vulnerabilities.[8] Althoughuse of NIST guidance is voluntary, the guidelines provide valuable insights and best practices to protect network systems and data.

51.     NIST guidance includes recommendations for risk assessments, risk management strategies, system access controls, training, data security, network monitoring, breach detection, and mitigation of existing anomalies.[9]

---

[7] *See, e.g.*, *id.*; Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited on November 11, 2021).

[8] *Framework for Improving Critical Infrastructure Cybersecurity*, NATIONAL INSTITUTE OF STANDARDS AND TECHNOLOGY (April 16, 2018), Appendix A, Table 2, *available at* https://nvl pubs.nist.gov/nistpubs/CSWP/NIST.CSWP.04162018.pdf (last visited on November 11, 2021).

[9] *Id.* at Table 2 pg. 36-43.

12

52.     Robinhood's failure to protect massive amounts of PII throughout breach period belies any assertion that Robinhood employed proper data security protocols or adhered to the spirit of the NIST guidance.

### E.  Value of Personally Identifiable Information

53.     PII is a valuable property right.  Its value is axiomatic, considering the value of Big Data in corporate America and the consequences of cyber thefts include heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond doubt that PII has considerable market value.

54.     The PII of consumers remains of high value to criminals, as evidenced by the prices they will pay through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, PII can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[10] Experian reports that a stolen credit or debit card number can sell for $5 to $110 on the dark web and that the "*fullz*" (a term criminals who steal credit card information use to refer to a complete set of information on a fraud victim) sold for $30 in 2017.[11] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[12]

55.     A study by the Identity Theft Resource Center shows the multitude of harms caused by fraudulent use of PII.[13]

---

[10] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at:* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited on November 11, 2021).
[11] *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at:* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited on November 11, 2021).
[12] *In the Dark*, VPNOverview, 2019, *available at:* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited on November 11, 2021).
[13] Source: "*Credit Card and ID Theft Statistics*" by Jason Steele, 10/24/17, https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited on November 11, 2021).

1
2
3
4
5
6
7
8
9
10
11
12



13   56.   PII is a valuable property right.  Its value is axiomatic. Considering the

14   value of Big Data in corporate America and the consequences of cyber thefts include

15   heavy prison sentences. Even this obvious risk to reward analysis illustrates beyond

16   doubt that PII has considerable market value.

17   57.   The PII of consumers remains of high value to criminals, as evidenced

18   by the prices they will pay through the dark web.

19   58.   Plaintiffs and the Class have experienced one or more of these harms

20   as a result of the data breach.

21   59.   Moreover, there may be a time lag between when harm occurs versus

22   when it is discovered, and between when PII is stolen and when it is used. According

23   to the U.S. Government Accountability Office, which conducted a study regarding

24   data breaches:

25   [L]aw enforcement officials told us that in some cases,
26   stolen data may be held for up to a year or more before being
     used to commit identity theft. Further, once stolen data have
27   been sold or posted on the Web, fraudulent use of that

28

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

> information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[14]

60.     Therefore, given the importance of safeguarding PII and of the foreseeable consequences that would occur if its data security system was breached, including, specifically, the significant costs that would be imposed on its customers as a result of a breach, Robinhood were, or should have been, fully aware of its responsibilities towards protecting customer PII.

### F.  **Damage to Plaintiffs and the Class Members Caused by the Data Breach**

61.     Plaintiffs and the Class Members have been damaged because their PII was accessed by hackers in the Data Breach.

62.     Plaintiffs and the Class Members have or will suffer actual injury as a direct result of the Data Breach.

63.     As a direct and proximate result of Robinhood's conduct, Plaintiffs and the Class have been placed at an imminent, immediate, and continuing increased risk of harm from fraud. Plaintiffs now have to take the time and effort to mitigate the actual and potential impact of the data breach on their everyday lives.

64.     On November 8, 2021, Robinhood began notifying customers that their PII may have been compromised.  However, Robinhood appears to be doing nothing to remedy the harm caused by its breach.

65.     Plaintiffs and the Class Members may also incur out-of-pocket costs for protective measures such as credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

---

[14] "Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown" by GAO, June 2007, https://www.gao.gov/assets/270/262904.html (last visited on November 11, 2021).

15

66.     Plaintiffs and the Class Members also suffered a loss of value of their PII when it was acquired by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in related cases.

67.     Plaintiffs and the Class Members were also damaged via benefit-of-the-bargain damages. The implied contractual bargain entered into between Plaintiffs and Robinhood included Robinhood's contractual obligation to provide adequate data security, which Robinhood failed to provide. Thus, Plaintiffs and the Class Members did not get what they paid for.

68.     Plaintiffs and the Class have suffered, and continue to suffer, economic damages and other actual harm for which they are entitled to compensation, including:

        a.  Trespass, damage to and theft of their PII;

        b.  Improper disclosure of their PII property;

        c.  The imminent and certainly impending injury flowing from potential fraud and identity theft posed by customers' PII being placed in the hands of criminals and misused via the sale of such information on the Internet black market;

        d.  Loss of privacy suffered as a result of the data breach;

        e.  Ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the data breach; and

        f.  Ascertainable losses in the form of deprivation of the value of customers' PII for which there is a well-established and quantifiable national and international market.

1

## V.   CLASS ALLEGATIONS

2      69.   Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of

3   Civil Procedure on behalf of themselves and on behalf of all other persons similarly

4   situated ("the Class").

5      70.   Plaintiffs propose the following Class and Sub-Class definitions,

6   subject to amendment as appropriate:

7           **Nationwide Class**:

8   All individuals in the United States who had any PII compromised as
a result of the Data Breach.

9   **California Subclass**:

10   All residents of California who had any PII compromised as a result
of the Data Breach.

11   **Illinois Subclass**:

12   All residents of Illinois who had any PII compromised as a result of
the Data Breach.

13   **New York Subclass**:

14   All residents of New York who had any PII compromised as a result
of the Data Breach.

15   **Indiana Subclass**:

16   All residents of Indiana who had any PII compromised as a result of
the Data Breach.

17   **Utah Subclass**:

18   All residents of Utah who had any PII compromised as a result of the
Data Breach.

19   **South Carolina Subclass**

20   All residents of South Carolina who had any PII compromised as a
result of the Data Breach

21   **Georgia Subclass**

22   All residents of Georgia who had any PII compromised as a result of
the Data Breach

23

24      71.   Excluded from each of the above Classes are Defendants and their

25   parents or subsidiaries, any entities in which it has a controlling interest, as well as

26   its  officers,  directors,  affiliates,  legal  representatives,  heirs,  predecessors,

27

28

CLASS ACTION COMPLAINT

successors, and assigns. Also excluded are any Judge to whom this case is assigned as well as his or her judicial staff and immediate family members.

72.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Classes before the Court determines whether certification is appropriate.

73.     Each of the proposed classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

74.     <u>Numerosity</u>. The Members of the Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiffs at this time, based on information and belief, the Class consists of thousands of customers of Robinhood whose data was compromised in the Data Breach.

75.     <u>Commonality</u>. There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

        a.  Whether Robinhood engaged in the conduct alleged herein;

        b.  Whether Robinhood's conduct violated the state consumer protection laws invoked below;

        c.  When Robinhood actually learned of the data breach and whether its response was adequate.

        d.  Whether Robinhood had a legal duty to adequately protect Plaintiffs' and the Class Members' PII;

        e.  Whether Robinhood breached its legal duty by failing to adequately protect Plaintiffs' and the Class Members' PII;

        f.  Whether Robinhood implemented and maintained reasonable security procedures and practices appropriate to the nature of storing Plaintiffs' and the Class Members' PII;

g.  Whether Robinhood knew or should have known that it did not employ reasonable measures to keep Plaintiffs' and the Class Members' PII secure and prevent loss or misuse of that PII;

h.  Whether Robinhood adequately addressed and fixed the vulnerabilities which permitted the data breach to occur;

i.  Whether Plaintiffs and the Class Members are entitled to recover actual damages and/or statutory damages;

j.  Whether Plaintiffs and the other Class Members are entitled to additional credit or identity monitoring beyond what the company is offering and are entitled to other monetary relief; and

k.  Whether Plaintiffs and the Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

76.  <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' PII, like that of every other Class Member, was compromised in the Data Breach.

77.  <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of the Members of the Class. Plaintiffs' Counsel are competent and experienced in litigating class actions, including data breach class actions.

78.  <u>Predominance</u>. Robinhood has engaged in a common course of conduct toward Plaintiffs and the Class Members, in that all the Plaintiffs' and the Class Members' PII was stored on the same computer systems and unlawfully accessed in the same way. The common issues arising from Robinhood's conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

19

1      79.    Superiority. A class action is superior to other available methods for the

2    fair and efficient adjudication of the controversy. Class treatment of common

3    questions of law and fact will be superior to multiple individual actions or piecemeal

4    litigation. Absent a class action, most Class Members would likely find that the cost

5    of litigating their individual claims is prohibitively high and would therefore have

6    no effective remedy. The prosecution of separate actions by individual Class

7    Members would create a risk of inconsistent or varying adjudications with respect

8    to individual Class Members, which would establish incompatible standards of

9    conduct for Robinhood. In contrast, the conduct of this action as a class action

10   presents far fewer management difficulties, conserves judicial resources and the

11   parties' resources, and protects the rights of each Class Member.

12     80.    Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2).

13   Robinhood has acted or has refused to act on grounds generally applicable to the

14   Class, so that final injunctive relief or corresponding declaratory relief is appropriate

15   as to the Class as a whole.

16     81.    Finally, all members of the purposed Classes are readily ascertainable.

17   Robinhood has access to addresses and other contact information for millions of

18   members of the Classes, which can be used to identify Class Members.

### COUNT I

### NEGLIGENCE

**(On behalf of Plaintiffs and the Nationwide Class)**

22     82.    Plaintiffs restate and reallege all proceeding allegations above and

23   hereafter as if fully set forth herein.

24     83.    Robinhood solicited and gathered PII of Plaintiffs and the Nationwide

25   Negligence Class to facilitate sales transactions.

26     84.    Robinhood knew, or should have known, of the risks inherent in

27   collecting the PII of Plaintiffs and the Class Members and the importance of

28

adequate security. On information and belief, Robinhood received warnings that hackers routinely attempted to access and acquire PII without authorization. Robinhood also knew or should have known about numerous, well-publicized data breaches involving other financial services companies.

85.     Robinhood owed duties of care to Plaintiffs and the Class Members whose PII was entrusted to it. Robinhood's duties included the following:

>    a.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting PII in its possession;
>
>    b.   To protect customers' PII using reasonable and adequate security procedures and systems that are compliant with the industry standards;
>
>    c.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches, and

86.     By collecting PII data, and using it for commercial gain, Robinhood had a duty of care to use reasonable means to secure and safeguard its computer property, to prevent disclosure of the PII, and to safeguard the PII from theft.

87.     Because Robinhood knew that a breach of its systems would damage thousands of its customers, including Plaintiffs and the Class Members, it had a duty to adequately protect their PII.

88.     Robinhood owed a duty of care not to subject Plaintiffs and the Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

89.     Robinhood knew, or should have known, that its systems did not adequately safeguard the PII of Plaintiffs and the Class Members.

90.     Robinhood breached its duties of care by failing to provide, or by acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the PII of Plaintiffs and the Class Members.

91.     Robinhood had a special relationship with Plaintiffs and the Class Members. Plaintiffs' and the Class Members' willingness to entrust Robinhood with their PII was predicated on the understanding that Robinhood would take adequate security precautions. Moreover, only Robinhood had the ability to protect its systems (and the PII that it stored on them) from attack.

92.     Robinhood own conduct also created a foreseeable risk of harm to Plaintiffs and the Class Members and their PII. Robinhood's misconduct included failing to:

    a.  Secure its customer support systems;

    b.  Secure access to its servers;

    c.  Comply with industry standard security practices;

    d.  Employ adequate network segmentation;

    e.  Implement adequate system and event monitoring;

    f.  Install updates and patches in a timely manner; and

    g.  Implement the systems, policies, and procedures necessary to prevent this type of data breach.

93.     Robinhood also had independent duties under state laws that required it to reasonably safeguard Plaintiffs' and the Class Members' PII.

94.     Robinhood breached the duties it owed to Plaintiffs and the Class Members in numerous ways, including:

    a.  By creating a foreseeable risk of harm through the misconduct previously described;

    b.  By failing to implement adequate security systems, protocols and practices sufficient to protect PII both before and after learning of the data breach; and

    c.  By failing to comply with the minimum industry data security standards during the period of the data breach.

95.    But for Robinhood's wrongful and negligent breach of the duties it owed Plaintiffs and the Class Members, their PII either would not have been compromised or they would have been able to prevent some or all of their damages.

96.    As a direct and proximate result of Robinhood's negligent conduct, Plaintiffs and the Class Members have suffered damages and are at imminent risk of further harm.

97.    The injury and harm that Plaintiffs and the Class Members suffered (as alleged above) was reasonably foreseeable.

98.    The injury and harm that Plaintiffs and the Class Members suffered (as alleged above) was the direct and proximate result of Robinhood's negligent conduct.

99.    Plaintiffs and the Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

## COUNT II

### NEGLIGENCE *PER SE*

### (On behalf of Plaintiffs and the Nationwide Class)

100.    Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

101.    Pursuant to Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, Robinhood had a duty to provide fair and adequate computer systems and data security to safeguard the PII of Plaintiffs and the Class Members.

102.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Robinhood, of failing to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Robinhood's duty in this regard.

103.   Robinhood solicited, gathered, and stored PII, of Plaintiffs and the Class Members to facilitate sales transactions that affect commerce.

104.   Robinhood violated the FTCA by failing to use reasonable measures to protect PII of Plaintiffs and the Class and not complying with applicable industry standards, as described herein.

105.   Robinhood's violation of the FTCA constitutes negligence *per se*.

106.   Plaintiffs and the Class are within the class of persons that the FTC Act was intended to protect.

107.   The harm that occurred as a result of the Data Breach is the type of harm the FTCA was intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and the Class.

108.   As a direct and proximate result of Robinhood's negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries damages arising from their inability to use their debit or credit cards because those cards were cancelled, suspended, or otherwise rendered unusable as a result of the data breach and/or false or fraudulent charges stemming from the data breach, including but not limited to late fees charges; damages from lost time and effort to mitigate the actual and potential impact of the data breach on their lives including, *inter alia*, by contacting their financial institutions to place to dispute fraudulent charges, closing or modifying financial accounts, closely reviewing and monitoring their accounts for unauthorized activity.

109.   Robinhood breached its duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and the Class Members' PII.

110.   Robinhood's violation of the FTCA constitutes negligence *per se*.

24

111.   But for Robinhood's wrongful and negligent breach of its duties owed to Plaintiffs and the Class Members, Plaintiffs and the Class Members would not have been injured.

112.   The injury and harm suffered by Plaintiffs and the Class Members was the reasonably foreseeable result of Robinhood's breach of its duties. Robinhood knew or should have known that it was failing to meet its duties, and that Robinhood's breach would cause Plaintiffs and the Class Members to experience the foreseeable harms associated with the exposure of their PII.

113.   As a direct and proximate result of Robinhood's negligent conduct, Plaintiffs and the Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

## COUNT III

### BREACH OF CONTRACT

### (On behalf of Plaintiffs and the Nationwide Class)

114.   Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

115.   When Plaintiffs and the Class Members provided their PII to Robinhood to create their accounts on its website, they entered into contracts by which Robinhood agreed to protect their PII in accordance with its Privacy Policy.

116.   Robinhood solicited and invited its customers, including Plaintiffs and the Class, to provide their PII and open their trading accounts on its website using their PII.

117.   An explicit part of the offer, as stated in its Privacy Policy, was that Robinhood would safeguard the PII using reasonable or industry-standard means.

118.   Robinhood also affirmatively represented on its website and in its Privacy Policy that it protected the PII of Plaintiffs and the Class in several ways, as described above.

CLASS ACTION COMPLAINT

119. Based on Robinhood's representations, Plaintiffs and the Class accepted the offers and provided Robinhood with their PII when they opened their accounts with Robinhood.

120. Robinhood entered into binding contracts with Plaintiffs that included a contractual obligation to reasonably protect Plaintiffs' and the Class Members' PII through, among other things, its Privacy Policy.

121. In entering into such contracts, Plaintiffs and the Class Members reasonably believed and expected that Robinhood's data security practices complied with relevant laws and regulations and were consistent with industry standards.

122. Plaintiffs and the Class Members would not have provided their PII to Robinhood had they known that Robinhood would not safeguard their PII as promised.

123. Plaintiffs and the Class Members fully performed their obligations under the contracts with Robinhood.

124. Robinhood breached the contracts by failing to safeguard Plaintiffs' and the Class Members' PII.

125. The losses and damages Plaintiffs and the Class Members sustained (as described above) were the direct and proximate result of Robinhood's breaches of its contracts with them.

126. Plaintiffs and the Class Members also are entitled to injunctive relief requiring Robinhood to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

## **COUNT IV**

### **BREACH OF IMPLIED CONTRACT**

**(On behalf of Plaintiffs and the Nationwide Class)**

127.   Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

128.   When Plaintiffs and the Class Members provided their PII to Robinhood to create their accounts on its website, they entered into contracts by which Robinhood agreed to protect their PII in accordance with its Privacy Policy.

129.   Robinhood solicited and invited its customers, including Plaintiffs and the Class, to provide their PII and open their trading accounts on its website using their PII.

130.   An implicit part of the offer was that Robinhood would safeguard the PII using reasonable or industry-standard means.

131.   Robinhood also affirmatively represented on its website and in its Privacy Policy that it protected the PII of Plaintiffs and the Class in several ways, as described above.

132.   Based on the implicit understanding and also on Robinhood's representations, Plaintiffs and the Class accepted the offers and provided Robinhood with their PII when they opened their accounts with Robinhood.

133.   Robinhood manifested its intent to enter into an implied contract that included a contractual obligation to reasonably protect Plaintiffs' and the Class Members' PII through, among other things, its Privacy Policy.

134.   In entering into such implied contracts, Plaintiffs and the Class Members reasonably believed and expected that Robinhood's data security practices complied with relevant laws and regulations and were consistent with industry standards.

135.   Plaintiffs and the Class Members would not have provided their PII to Robinhood had they known that Robinhood would not safeguard their PII as promised.

136.   Plaintiffs and the Class Members fully performed their obligations under the implied contracts with Robinhood.

137.   Robinhood breached the implied contracts by failing to safeguard Plaintiffs' and the Class Members' PII.

138.   The losses and damages Plaintiffs and the Class Members sustained (as described above) were the direct and proximate result of Robinhood's breaches of its implied contracts with them.

139.   Plaintiffs and the Class Members also are entitled to injunctive relief requiring Robinhood to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and the Class Members.

## COUNT V

### UNJUST ENRICHMENT

### (On behalf of Plaintiffs and the Nationwide Class)

140.   The losses and damages Plaintiffs and the Class Members sustained (as described above) were the direct and proximate result of Robinhood's breaches of its implied contracts with them.

141.   Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

142.   This count is plead in the alternative to Count III above.

143.   Plaintiffs and members of the Nationwide Class conferred a monetary benefit on Robinhood. Specifically, they purchased financial products through Robinhood and paid fees to Robinhood.

144.   Robinhood knew that Plaintiffs and the Class conferred a benefit on Robinhood. Robinhood profited from their purchases and used their PII for its own business purposes.

145. The monies for goods and services that Plaintiffs and the Class Members paid to Robinhood were to be used by Robinhood, in part, to pay for the administrative costs of reasonable data privacy and security practices and procedures.

146. Robinhood failed to secure the Plaintiffs' and the Class Members' PII, and therefore, it was unjustly enriched by the trading accounts Plaintiffs and the Class Members opened with Robinhood, that they would not have opened had they known that Robinhood did not keep their personal information secure.

147. Plaintiffs and the Class have no adequate remedy at law.

148. Under the circumstances, it would be unjust for Robinhood to be permitted to retain any of the benefits that Plaintiffs and the Class Members conferred on it.

149. Robinhood should be compelled to disgorge into a common fund or constructive trust for the benefit of Plaintiffs and the Class Members proceeds that it unjustly received from them. In the alternative, Robinhood should be compelled to refund the amounts that Plaintiffs and the Class overpaid.

## COUNT VI

## DECLARATORY JUDGMENT

### (On behalf of Plaintiffs and the Nationwide Class)

150. Plaintiffs restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

151. Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

152.   Robinhood owes duties of care to Plaintiffs and the Class Members which required it to adequately secure PII.

153.   Robinhood still possesses PII regarding Plaintiffs and the Class Members.

154.   Plaintiffs allege that Robinhood's data security measures remain inadequate. Robinhood publicly denies these allegations. Furthermore, Plaintiffs continue to suffer injury as a result of the compromise of their PII and remain at imminent risk that further compromises of their PII will occur in the future.

155.   Under its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

       d.  Robinhood owes a legal duty to secure consumers' PII under the common law and Section 5 of the FTC Act;

       e.  Robinhood's existing security measures do not comply with its explicit or implicit contractual obligations and duties of care to provide reasonable security procedures and practices appropriate to the nature of the information to protect customers' PII;

       f.  Robinhood continues to breach this legal duty by failing to employ reasonable measures to secure consumers' PII;

       g.  to comply with its explicit or implicit contractual obligations and duties of care, Robinhood must implement and maintain reasonable security measures, including, but not limited to:

          i.  Engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Robinhood's systems on a periodic basis, and ordering Robinhood to promptly correct any problems or issues detected by such third-party security auditors;

    ii.  Engaging third-party security auditors and internal personnel to run automated security monitoring;

    iii.  Auditing, testing, and training its security personnel regarding any new or modified procedures;

    iv.  Segmenting its user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Robinhood's systems;

    v.  Conducting regular database scanning and securing checks;

    vi.  Routinely and continually conducting internal training and education to inform internal security personnel how to identify and contain a breach when it occurs and what to do in response to a breach;

    vii.  Purchasing credit monitoring services for Plaintiffs and the Class Members for a period of ten years; and

    viii.  Meaningfully educating its users about the threats they face as a result of the loss of their PII to third parties, as well as the steps Robinhood's customers must take to protect themselves.

156.   This Court also should issue corresponding prospective injunctive relief requiring Robinhood to employ adequate security protocols consistent with law and industry standards to protect consumers' PII.

157.   If an injunction is not issued, Plaintiffs will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at Robinhood. The risk of another such breach is real, immediate, and substantial. If another breach

31

at Robinhood occurs, Plaintiffs will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

158.   The hardship to Plaintiffs if an injunction does not issue exceeds the hardship to Robinhood if an injunction is issued. Plaintiffs will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Robinhood of complying with an injunction by employing reasonable prospective data security measures is relatively minimal, and Robinhood has a pre-existing legal obligation to employ such measures.

159.   Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Robinhood, thus eliminating the additional injuries that would result to Plaintiffs and consumers whose PII would be further compromised.

## COUNT VII

## VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW, CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*

### (On behalf of Plaintiff Adam Fisher and the California Subclass)

160.   Plaintiff Fisher restates and realleges all proceeding allegations above and hereafter as if fully set forth herein.

161.   Robinhood is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

162.   Robinhood violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

163.   Robinhood's unlawful, unfair acts and deceptive acts and practices include:

> a.   Robinhood failed to implement and maintain reasonable security measures to protect Plaintiff Fisher and the California Subclass Members from unauthorized disclosure, release, data breaches,

32

and theft, which was a direct and proximate cause of the Data
Breach;

b.  Robinhood failed to:

    i.  Secure its e-commerce website;

    ii.  Secure access to its servers;

    iii.  Comply with industry standard security practices;

    iv.  Follow the PCI-DSS standards;

    v.  Encrypt PCD at the point-of-sale and during transit;

    vi.  Employ adequate network segmentation;

    vii.  Implement adequate system and event monitoring;

    viii.  Utilize modern payment systems that provided more
security against intrusion;

    ix.  Install updates and patches in a timely manner, and

    x.  Implement the systems, policies, and procedures
necessary to prevent this type of data breach.

c.  Robinhood failed to identify foreseeable security risks,
remediate identified security risks, and adequately improve
security. This conduct, with little if any utility, is unfair when
weighed against the harm to Plaintiff Fisher and the California
Subclass Members whose PII has been compromised;

d.  Robinhood's failure to implement and maintain reasonable
security measures also was contrary to legislatively declared
public policy that seeks to protect consumer data and ensure that
entities that are trusted with it use appropriate security measures.
These policies are reflected in laws, including the FTC Act, 15
U.S.C. § 45, California's Consumer Records Act, Cal. Civ. Code

CLASS ACTION COMPLAINT

§§ 1798.81.5 *et seq.*, and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

e. Robinhood's failure to implement and maintain reasonable security measures also lead to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff Fisher and the California Subclass Members could not know of Robinhood's inadequate security and compromise of its e-commerce site, consumers could not have reasonably avoided the harms that Robinhood caused;

f. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff Fisher's and the California Subclass Members' PII, including by implementing and maintaining reasonable security measures;

g. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Fisher's and the California Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

h. Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff Fisher's and the California Subclass Members' PII;

i. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff Fisher's and the California

Subclass Members' PII, including duties imposed by the FTC Act, 15 U.S.C § 45; California's Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.*; and California's Consumer Privacy Act, Cal. Civ. Code §§ 1798.100 *et seq.*;

j. Engaging in unlawful business practices by violating Cal. Civ. Code § 1798.82; and

k. Among other ways to be discovered and proved at trial.

164. Robinhood's representations and omissions to Plaintiff Fisher and the California Subclass Members were material because they were likely to deceive reasonable consumers about the adequacy of Robinhood's data security and ability to protect the privacy of consumers' PII.

165. Robinhood intended to mislead Plaintiff Fisher and the California Subclass Members and induce them to rely on its misrepresentations and omissions.

166. Had Robinhood disclosed to Plaintiff Fisher and the California Subclass Members that its data systems were not secure and, thus, vulnerable to attack, Robinhood would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law. Instead, Robinhood received, maintained, and compiled Plaintiff Fisher's and the California Subclass Members' PII as part of the services and goods Robinhood provided without advising Plaintiff Fisher and the California Subclass Members that Robinhood's data security practices were insufficient to maintain the safety and confidentiality of Plaintiff Fisher and the California Subclass Members'. Accordingly, Plaintiff Fisher and the California Subclass Members acted reasonably in relying on Robinhood's misrepresentations and omissions, the truth of which they could not have discovered.

167.   Robinhood acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff Fisher and the California Subclass Members' rights.

168.   As a direct and proximate result of Robinhood's unfair, unlawful, and fraudulent acts and practices, Plaintiff Fisher and the California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

169.   Plaintiff Fisher and the California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Robinhood's unfair, unlawful, and fraudulent business practices or use of their PII and PCD; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

170.   Plaintiff Fisher and California Class Members are also entitled to injunctive relief requiring Robinhood to, e.g., (a) strengthen its data security systems and monitoring procedures; (b) submit to future annual audits of those systems and monitoring procedures; and (c) continue to provide adequate credit monitoring to all California Class Members.

## COUNT VIII

**VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("ILLINOIS CFA"), 815 ILL. COMP. STAT. §§ 505/1, *ET SEQ.***

**(On behalf of Plaintiffs Ashley Carter, Christina Lopez, Lucia Flores and Rachel Barnett and the Illinois Subclass)**

171.   Plaintiffs Carter, Lopez, Flores and Barnett restate and reallege all proceeding allegations above and hereafter as if fully set forth herein.

172.   This Count is brought on behalf of Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass.

173.   Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass are "consumers" as that term is defined in 815 ILL. COMP. STAT. § 505/1(e).

174.   Plaintiffs Carter, Lopez, Flores and Barnett, the Illinois Subclass, and Robinhood are "persons" as that term is defined in 815 ILL. COMP. STAT. § 505/1(c).

175.   Robinhood is engaged in "trade" or "commerce," including provision of services, as those terms are defined under 815 ILL. COMP. STAT. § 505/1(f).

176.   Robinhood engages in the "sale" of "merchandise" (including services) as defined by 815 ILL. COMP. STAT. § 505/1(b) and (d).

177.   Robinhood engaged in deceptive and unfair acts and practices, misrepresentation, and the concealment, suppression, and omission of material facts in connection with the sale and advertisement of "merchandise" (as defined in the Illinois CFA) in violation of the Illinois CFA, including but not limited to the following:

  a.  failing to maintain sufficient security to keep Plaintiffs Carter, Lopez, Flores and Barnett and Subclass members' sensitive PII from being hacked and stolen;

  b.  misrepresenting material facts to Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' PII from unauthorized disclosure, release, data breaches, and theft;

c.  misrepresenting material facts to Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass, in connection with sale of goods and services, by representing that Robinhood did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' PII; and

d.  failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

178.   In addition, Robinhood's failure to disclose that its computer systems were not well-protected and that Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' sensitive information was vulnerable and susceptible to intrusion and cyberattacks constitutes deceptive and/or unfair acts or practices because Robinhood knew such facts would (a) be unknown to and not easily discoverable by Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass; and (b) defeat Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' ordinary, foreseeable and reasonable expectations concerning the security of their PII on Robinhood's servers.

179.   Robinhood intended that Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass rely on its deceptive and unfair acts and practices, misrepresentations, and the concealment, suppression, and omission of material facts, in connection with Robinhood's offering of goods and services and incorporating Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' PII on its servers, in violation of the Illinois CFA.

180.   Robinhood also engaged in unfair acts and practices by failing to maintain the privacy and security of Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the data breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45) and similar state laws.

181.   Robinhood's wrongful practices occurred in the course of trade or commerce.

182.   Robinhood's wrongful practices were and are injurious to the public interest because those practices were part of a generalized course of conduct on the part of Robinhood that applied to Plaintiffs Carter, Lopez, Flores and Barnett and all Illinois Subclass members and were repeated continuously before and after Robinhood obtained sensitive PII and other information from Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members. Plaintiffs Carter, Lopez, Flores and Barnett and all Illinois Subclass members were adversely affected by Robinhood's conduct and the public was and is at risk as a result thereof.

183.   As a result of Robinhood's wrongful conduct, Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members were injured in that they never would have allowed their sensitive PII – the value of which Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members no long have control – to be provided to Robinhood if they had been told or knew that Robinhood failed to maintain sufficient security to keep such data from being hacked and taken by others.

184.   Robinhood's unfair and/or deceptive conduct proximately caused Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members' injuries because, had Robinhood maintained customer PII with adequate security, Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass members would not have lost it.

185.   As a direct and proximate result of Robinhood's conduct, Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members have suffered harm, including but not limited to loss of time and money obtaining protections against future identity theft; financial losses related to their accounts with Robinhood that Plaintiffs Carter, Lopez, Flores and Barnett and the Illinois Subclass Members would have never made had they known of Robinhood's careless approach to cybersecurity; lost control over the value of PII; unreimbursed losses relating to fraudulent charges; and other harm resulting from the unauthorized use or threat of unauthorized use of stolen PII, entitling them to damages in an amount to be proven at trial.

186.   Pursuant to 815 ILL. COMP. STAT. § 505/10a(a), Plaintiffs Carter, Lopez, Flores and Barnett seek actual, compensatory, and punitive damages (pursuant to 815 ILL. COMP. STAT. § 505/10a(c)), injunctive relief, and court costs and attorneys' fees as a result of Robinhood's violations of the Illinois CFA.

## COUNT IX

## VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349

### (On behalf of Plaintiff Denise Okeefe and the New York Subclass)

187.   Plaintiff Okeefe restates and realleges all preceding allegations above and hereafter as if fully set forth herein.

188.   New York's General Business Law § 349 ("GBL § 349") prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

189.   In its provision of services throughout the State of New York, Robinhood conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

190.   Plaintiff Okeefe and the New York Subclass Members are consumers who conducted transactions with Robinhood for their personal use.

191.   By the acts and conduct alleged herein, Robinhood has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, the expectation that Robinhood would implement adequate cybersecurity, when in fact Robinhood did not.

192.   The foregoing deceptive acts and practices were directed at consumers.

193.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability and measures taken by Robinhood to safeguard consumer PII, and to induce consumers to enter transactions with Robinhood.

194.   By reason of this conduct, Robinhood engaged in deceptive conduct in violation of GBL § 349.

195.   Robinhood's actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Okeefe and the New York Subclass Members have sustained from having provided their PII to Robinhood, which was exposed in the data breach.

196.   As a result of Robinhood's violations, Plaintiff Okeefe and the New York Subclass Members have suffered damages because: (a) they would not have provided their PII to Robinhood had they known Robinhood did not use "reasonable security measures, including physical, administrative, and technical safeguards to help us protect your information from unauthorized access, use and disclosure"; (b) they have suffered identity theft and/or fraudulent charges and their PII has been devalued as a result of being exposed in the data breach; and (c) Plaintiff Okeefe and the New York Subclass Members must spend considerable time and expenses dealing with the effects of the data breach, and are now at greater risk for future harm stemming from the data breach.

197.   On behalf of herself and other the New York Subclass Members, Plaintiff Okeefe seeks to recover their actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

**COUNT X**

**VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT, IND. CODE §§ 24-5-0.5-1, *ET SEQ.***

**(On behalf of Plaintiff Tiffany Cole and the Indiana Subclass)**

198.   Plaintiff Cole restates and realleges all preceding allegations above and hereafter as if fully set forth herein.

199.   Indiana's Deceptive Consumer Sales Act, Ind. Code § 24-5-0.5-3(a) ("IDCSA") prohibits suppliers from engaging in deceptive, unfair, and abusive acts or omissions in consumer transactions.

200.   Robinhood is a "supplier" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions," in violation of the IDCSA.  As a regular part of its business, Robinhood sells financial products and accepts payments, like Plaintiff Cole, online and through a mobile app. Plaintiff Cole's and the Indiana Class Members' transactions were directed towards Indiana, and on information and belief, those transactions were processed in Indiana and the information resulting from those transactions was stored in Indiana.

201.   In connection with its consumer transactions, Robinhood engaged in unfair, abusive or deceptive acts, omissions or practices by, *inter alia*, engaging in the following conduct:

      a.   sensitive PII from being hacked and stolen;

      b.   misrepresenting material facts to Plaintiff Cole's and the Indiana Class Members, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard

42

Plaintiff Cole's and the Indiana Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

c. misrepresenting material facts to Plaintiff Cole and the Indiana Class, in connection with the sale of goods and services, by representing that Robinhood did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Cole's and the Indiana Class Members' PII, such requirements included, but are not limited to, those imposed by laws such as the Federal Trade Commission Act (15 U.S.C. § 45) and Indiana's data breach statute (Ind. Code § 24-4.9-3.5); and

d. failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff Cole and the Indiana Class Members' PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

202. Robinhood knew that its computer systems and data security practices were inadequate to safeguard Plaintiff Cole and the Indiana Class Members' PII and that risk of a data breach or theft was highly likely. Nevertheless, it did nothing to warn Plaintiff Cole and the Indiana Class Members about its data insecurities, and instead affirmatively promised that it would maintain adequate security. This was a deliberate effort to mislead customers, such as Plaintiff Cole and the Indiana Class Members, in order to encourage them to use credit and debit cards to make purchases or secure rentals even while Robinhood knew that its customers' sensitive PII was vulnerable.

203.   The above unfair and deceptive practices and acts by Robinhood were done a part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under the IDCSA.

204.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Cole and the Indiana Class Members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their financial and personal information and damages.

205.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Cole and the Indiana Class Members are now likely to suffer identity theft crimes, and face a lifetime risk of identity theft crimes.

206.   Plaintiff Cole and the Indiana Class Members seek relief under Ind. Code § 24-5-0.5-4, including, but not limited to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

207.   Plaintiff Cole and the Indiana Class Members injured by Defendant's unfair and deceptive trade practices also seek treble damages pursuant to Ind. Code §24-5-0.5-4(i).

## <u>COUNT XI</u>

**VIOLATION OF THE UTAH DECEPTIVE CONSUMER SALES ACT, UTAH CODE §§ 13-11a-3, *ET SEQ.* ("UDCSA")**

**(On behalf of Plaintiff Baylee Mestaz and the Utah Subclass)**

208.   Plaintiff Mestaz realleges and incorporates all previous allegations as though fully set forth herein.

209.   Utah's Deceptive Consumer Sales Act, Utah Code § 13-11a-3 ("UDCSA") prohibits suppliers from engaging in deceptive, unfair, and abusive acts or omissions in consumer transactions.

210.   Robinhood is a "supplier" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions," in

44

violation of the UDCSA.  As a regular part of its business, Robinhood sells financial products and accepts payments, like Plaintiff Mestaz, online and through a mobile app. Plaintiff Mestaz's and the Utah Class Members' transactions were directed towards Utah, and on information and belief, those transactions were processed in Utah and the information resulting from those transactions was stored in Utah.

211.   In connection with its consumer transactions, Robinhood engaged in unfair, abusive or deceptive acts, omissions or practices by, *inter alia*, engaging in the following conduct:

    a.  sensitive PII from being hacked and stolen;

    b.  misrepresenting material facts to Plaintiff Mestaz's and the Utah Class Members, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff Mestaz's and the Utah Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

    c.  misrepresenting material facts to Plaintiff Mestaz and the Utah Class, in connection with the sale of goods and services, by representing that Robinhood did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Mestaz's and the Utah Class Members' PII, such requirements included, but are not limited to, those imposed by laws such as the Federal Trade Commission Act (15 U.S.C. § 45); and

    d.  failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff Mestaz and the Utah Class Members' PII and other personal

45

1
2

information from further unauthorized disclosure, release, data breaches, and theft.

3
4
5
6
7
8
9
10
11

212.   Robinhood knew that its computer systems and data security practices were inadequate to safeguard Plaintiff Mestaz's and the Utah Class Members' PII and that risk of a data breach or theft was highly likely.  Nevertheless, it did nothing to warn Plaintiff Mestaz and the Utah Class Members about its data insecurities, and instead affirmatively promised that it would maintain adequate security.  This was a deliberate effort to mislead customers, such as Plaintiff Mestaz and the Utah Class Members, in order to encourage them to use credit and debit cards to make purchases or secure rentals even while Robinhood knew that its customers' sensitive PII was vulnerable.

12
13
14

213.   The above unfair and deceptive practices and acts by Robinhood were done a part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under the UDCSA.

15
16
17
18

214.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Mestaz and the Utah Class Members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their financial and personal information and damages.

19
20
21

215.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Mestaz and the Utah Class Members are now likely to suffer identity theft crimes, and face a lifetime risk of identity theft crimes.

22
23
24

216.   Plaintiff Mestaz and the Utah Class Members seek relief under Utah Code § 13-11a-4, including, but not limited to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

25
26
27

217.   Plaintiff Mestaz and the Utah Class Members injured by Defendant's unfair and deceptive trade practices also seek treble damages pursuant to Utah Code § 13-11a-4.

28

CLASS ACTION COMPLAINT

**COUNT XII**

**VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE**

**PRACTICES ACT, S.C. CODE §§ 39-5-20, *ET SEQ.* ("SCUTPA")**

**(On behalf of Plaintiff John Cooper and the South Carolina Subclass)**

218.   Plaintiff Cooper realleges and incorporates all previous allegations as though fully set forth herein.

219.   South Carolina's Unfair Trade Practices Act, S.C. Code § 39-5-20 ("SCUTPA") prohibits suppliers from engaging in deceptive, unfair, and abusive acts or omissions in consumer transactions.

220.   Robinhood is a "supplier" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions," in violation of the SCUTPA.  As a regular part of its business, Robinhood sells financial products and accepts payments, like Plaintiff Cooper, online and through a mobile app. Plaintiff Cooper's and the South Carolina Class Members' transactions were directed towards South Carolina, and on information and belief, those transactions were processed in South Carolina and the information resulting from those transactions was stored in South Carolina.

221.   In connection with its consumer transactions, Robinhood engaged in unfair, abusive or deceptive acts, omissions or practices by, *inter alia*, engaging in the following conduct:

      a.   sensitive PII from being hacked and stolen;

      b.   misrepresenting material facts to Plaintiff Cooper's and the South Carolina Class Members, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff Cooper's and the South Carolina Class

Members' PII from unauthorized disclosure, release, data breaches, and theft;

c.   misrepresenting material facts to Plaintiff Cooper and the South Carolina Class, in connection with the sale of goods and services, by representing that Robinhood did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Cooper's and the South Carolina Class Members' PII, such requirements included, but are not limited to, those imposed by laws such as the Federal Trade Commission Act (15 U.S.C. § 45); and

d.   failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff Cooper and the South Carolina Class Members' PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

222.   Robinhood knew that its computer systems and data security practices were inadequate to safeguard Plaintiff Cooper's and the South Carolina Class Members' PII and that risk of a data breach or theft was highly likely. Nevertheless, it did nothing to warn Plaintiff Cooper and the South Carolina Class Members about its data insecurities, and instead affirmatively promised that it would maintain adequate security. This was a deliberate effort to mislead customers, such as Plaintiff Cooper and the South Carolina Class Members, in order to encourage them to use credit and debit cards to make purchases or secure rentals even while Robinhood knew that its customers' sensitive PII was vulnerable.

223.   The above unfair and deceptive practices and acts by Robinhood were done a part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under the SCUTPA.

224.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Cooper and the South Carolina Class Members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their financial and personal information and damages.

225.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Cooper and the South Carolina Class Members are now likely to suffer identity theft crimes, and face a lifetime risk of identity theft crimes.

226.   Plaintiff Cooper and the South Carolina Class Members seek relief under S.C. Code § 39-5-140, including, but not limited to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

227.   Plaintiff Cooper and the South Carolina Class Members injured by Defendant's unfair and deceptive trade practices also seek treble damages pursuant to S.C. Code § 39-5-140.

## COUNT XIII

### VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT, GA. CODE §§ 10-1-393, *ET SEQ.* ("GFBPA")

#### (On behalf of Plaintiff Crystal Harmon and the Georgia Subclass)

228.   Plaintiff Harmon realleges and incorporates all previous allegations as though fully set forth herein.

229.   Georgia's Fair Business Practices Act, Ga. Code § 10-1-393 ("GFBPA") prohibits suppliers from engaging in deceptive, unfair, and abusive acts or omissions in consumer transactions.

230.   Robinhood is a "supplier" who engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of "consumer transactions," in violation of the GFBPA.  As a regular part of its business, Robinhood sells financial products and accepts payments, like Plaintiff Harmon, online and through a mobile app. Plaintiff Harmon's and the Georgia Class Members' transactions were directed

49

towards Georgia, and on information and belief, those transactions were processed in Georgia and the information resulting from those transactions was stored in Georgia.

231.   In connection with its consumer transactions, Robinhood engaged in unfair, abusive or deceptive acts, omissions or practices by, *inter alia*, engaging in the following conduct:

      a.  sensitive PII from being hacked and stolen;

      b.  misrepresenting material facts to Plaintiff Harmon's and the Georgia Class Members, in connection with the sale of goods and services, by representing that it would maintain adequate data privacy and security practices and procedures to safeguard Plaintiff Harmon's and the Georgia Class Members' PII from unauthorized disclosure, release, data breaches, and theft;

      c.  misrepresenting material facts to Plaintiff Harmon and the Georgia Class, in connection with the sale of goods and services, by representing that Robinhood did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Plaintiff Harmon's and the Georgia Class Members' PII, such requirements included, but are not limited to, those imposed by laws such as the Federal Trade Commission Act (15 U.S.C. § 45); and

      d.  failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiff Harmon and the Georgia Class Members' PII and other personal information from further unauthorized disclosure, release, data breaches, and theft.

232.   Robinhood knew that its computer systems and data security practices were inadequate to safeguard Plaintiff Harmon's and the Georgia Class Members' PII and that risk of a data breach or theft was highly likely.  Nevertheless, it did nothing to warn Plaintiff Harmon and the Georgia Class Members about its data insecurities, and instead affirmatively promised that it would maintain adequate security.  This was a deliberate effort to mislead customers, such as Plaintiff Harmon and the Georgia Class Members, in order to encourage them to use credit and debit cards to make purchases or secure rentals even while Robinhood knew that its customers' sensitive PII was vulnerable.

233.   The above unfair and deceptive practices and acts by Robinhood were done a part of a scheme, artifice, or device with intent to defraud or mislead and constitute incurable deceptive acts under the GFBPA.

234.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Harmon and the Georgia Class Members suffered injuries, including the loss of their legally protected interest in the confidentiality and privacy of their financial and personal information and damages.

235.   As a direct and proximate result of Robinhood's deceptive trade practices, Plaintiff Harmon and the Georgia Class Members are now likely to suffer identity theft crimes, and face a lifetime risk of identity theft crimes.

236.   Plaintiff Harmon and the Georgia Class Members seek relief under Ga. Code § 10-1-399, including, but not limited to damages, restitution, penalties, injunctive relief, and/or attorneys' fees and costs.

237. Plaintiff Harmon and the Georgia Class Members injured by Defendant's unfair and deceptive trade practices also seek treble damages pursuant to Ga. Code § 10-1-399.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

a. An order certifying this action as a class action under Fed. R. Civ. P. 23, defining the classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representative of the Classes requested herein;

b. Judgment in favor of Plaintiffs and the Class Members awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c. An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d. An order instructing Robinhood to purchase or provide funds for credit monitoring services for Plaintiffs and all Class Members;

e. An order requiring Robinhood to pay the costs involved in notifying the Class Members about the judgment and administering the claims process;

f. A judgment in favor of Plaintiffs and the Classes awarding them pre-judgment and post judgment interest, reasonable attorneys' fees, costs and expenses as allowable by law, and

g. An award of such other and further relief as this Court may deem just and proper.

CLASS ACTION COMPLAINT

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all triable issues.

Dated:   November 17, 2021

SIRI & GLIMSTAD LLP

By: _____

Mason Barney (*pro hac vice* forthcoming)
Nicholas Armer (Bar No. 330577)
Sonal Jain (*pro hac vice* forthcoming)

*Attorneys for Plaintiffs*

53