Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
(650) 858-6000

Alan Schoenfeld (*pro hac vice* pending)
alan.schoenfeld@wilmerhale.com
Michael Bongiorno (*pro hac vice*)
michael.bongiorno@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

*Attorneys for Defendants Robinhood Markets, Inc.; Robinhood Crypto, LLC; Robinhood Financial LLC; Robinhood Securities, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

IN RE ROBINHOOD DATA SECURITY LITIGATION

Master File No: 3:21-cv-08906-JD
(consolidated with 3:21-cv-09290-JD and 3:22-CV-00224-JD)

**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

*[Filed concurrently with [Proposed] Order]*

Judge:  Hon. James Donato
Date:  August 11, 2022, 10:00 am
Location:  Courtroom 11 – 19th floor

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2

**PLEASE TAKE NOTICE** that on August 11, 2022 at 10:00 a.m., or as soon thereafter as

3 the matter may be heard, in the United States District Court for the Northern District of California,

4 Courtroom 11, 19th Floor, located at 450 Golden Gate Avenue, San Francisco, CA 94102,

5 Defendants Robinhood Markets, Inc.; Robinhood Crypto, LLC; Robinhood Financial LLC;

6 Robinhood Securities, LLC ("Defendants" or "Robinhood") through their undersigned counsel,

7 will, and hereby do, move to dismiss Plaintiffs Adam Fisher, Ashley Carter, Christina Lopez,

8 Rachel Barnett, Lucia Flores, Tiffany Cole, Denise Okeefe, Baylee Mestaz, John Cooper, Crystal

9 Harmon, Michelle Durden, Karen Benoit, Mark Glinoga, Adam Zullo, David Perez, Thomas

10 Barretti, Thomas Richardson, Donna Ardizzone, Tom Sunog, Joseph Massaro, Cassie Cowen,

11 Christopher Wheeler, Simon Fulmer, Harold Nyanjom, and Saul Sanchez ("Plaintiffs")'s

12 Consolidated Class Action Complaint ("CAC") pursuant to Federal Rules of Civil Procedure

13 12(b)(1) and 12(b)(6).  The Motion is based on this Notice, the supporting Memorandum of Points

14 and Authorities, the complete files and records in this action, and any additional material and

15 arguments as may be considered in connection with the hearing on the Motion.

16

Robinhood seeks to dismiss the CAC because (1) Plaintiffs lack Article III standing,

17 (2) Plaintiffs are not entitled to equitable relief, and (3) each claim fails under Rule 12(b)(6).

18

19

Respectfully submitted,

20

21 Dated: June 27, 2022

WILMER CUTLER PICKERING
    HALE AND DORR LLP

22

By:  */s/ Michael Bongiorno*

23
        Michael Bongiorno (*pro hac vice*)
        Alan Schoenfeld (*pro hac vice* pending)
        Allison Que

24

25
    *Attorneys for Defendants Robinhood Markets, Inc.,
    Robinhood Crypto, LLC, Robinhood Financial LLC,
    Robinhood Securities, LLC*

26

27

28

1

**MEMORANDUM OF POINTS & AUTHORITIES**

2

**TABLE OF CONTENTS**

3

INTRODUCTION ...................................................................................................................1

4

BACKGROUND ....................................................................................................................1

5

ARGUMENT ..........................................................................................................................1

6

I.      THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER 12(b)(1)

7

        BECAUSE PLAINTIFFS LACK ARTICLE III STANDING............................................2

8

II.     PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF ...................................6

9

III.    EACH CLAIM SEPARATELY FAILS UNDER RULE 12(b)(6)....................................7

10

        A.      Plaintiffs Fail To State A Negligence Claim (Counts I & II) ................................7

11

                1.      The economic loss rule bars the negligence claim.....................................7

12

                2.      Plaintiffs fail to plead the elements of a negligence claim .........................8

13

                3.      Plaintiffs' negligence per se "claim" fails .................................................9

14

        B.      Plaintiffs Fail To State A Breach Of Contract Claim (Count III)...........................9

15

        C.      Plaintiffs Fail To State An Implied Contract Claim (Count IV)............................10

16

        D.      Plaintiffs Fail To State An Unjust Enrichment Claim (Count V).........................11

17

        E.      The California Plaintiffs To State A UCL Claim (Count VII) ..............................11

18

                1.      The California Plaintiffs fail to plead economic injury or reliance ..........11

19

                2.      None of the three UCL prongs applies ....................................................11

20

        F.      The California Plaintiffs Fail To State A CCRA Or CCPA Claim (Counts

21

                VIII & IX)............................................................................................................13

22

        G.      Plaintiffs' Non-California Statutory Claims All Fail (Counts X-XXIV)..............14

23

CONCLUSION.......................................................................................................................15

24

25

26

27

28

i

1

## <u>TABLE OF AUTHORITIES</u>

2
Page(s)

3
**CASES**

4
*AAVN, Inc. v. WestPoint Home, Inc.*,

5
     2019 WL 1168102 (N.D. Ill. Mar. 13, 2019)...................................................15

6
*Ables v. Brooks Bros. Grp., Inc.*,

7
     2018 WL 8806667 (C.D. Cal. June 7, 2018) ...............................................4, 5

8
*Adams v. Cole Haan, LLC*,

9
     2020 WL 5648605 (C.D. Cal. Sept. 3, 2020) ...................................................7

10
*Aguilera v. Pirelli Armstrong Tire Corp.*,

11
     223 F.3d 1010 (9th Cir. 2000) ........................................................................9

12
*Anderson v. Kimpton Hotel & Rest. Grp., LLC*,

13
     2019 WL 3753308 (N.D. Cal. Aug. 8, 2019) .................................................14

14
*Antman v. Uber Techs., Inc.*,

15
     2015 WL 6123054 (N.D. Cal. Oct. 19, 2015)..................................................3

16
*Baba v. Hewlett-Packard Co.*,

17
     2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ..................................................12

18
*Bass v. Facebook, Inc.*,

19
     394 F. Supp. 3d 1024 (N.D. Cal. 2019) ...........................................................4

20
*Bohnak v. Marsh & McLennan Cos., Inc.*,

21
     2022 WL 158537 (S.D.N.Y. Jan. 17, 2022) ....................................................6

22
*Bray v. Gamestop Corp.*,

23
     2018 WL 11226516 (D. Del. Mar. 16, 2018) ................................................15

24
*Clapper v. Amnesty Int'l USA*,

25
     568 U.S. 398 (2013).........................................................................................5

26
*Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*,

27
     887 F.3d 803 (7th Cir. 2018) ...........................................................................8

28

ii

*De Bouse v. Bayer*,

     922 N.E.2d 309 (Ill. 2009) ........................................................................................15

*Dent v. NFL*,

     902 F.3d 1109 (9th Cir. 2018) ...................................................................................9

*Dewey v. Volkswagon*,

     558 F. Supp. 2d 505 (D.N.J. 2008) ....................................................................14, 15

*Doe v. CVS Pharmacy, Inc.*,

     982 F.3d 1204 (9th Cir. 2020) .................................................................................13

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,

     2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) ...........................................................4

*Edwards-Astin v. Medtronic Minimed, Inc.*,

     2008 WL 11319723 (N.D. Ga. June 4, 2008) .........................................................15

*Elias v. Hewlett-Packard Co.*,

     950 F. Supp. 2d 1123 (N.D. Cal. 2013) ..................................................................12

*Escabi v. Twins Contracting, LLC*,

     2022 WL 1699054 (N.Y. Sup. Ct. 2022) ................................................................14

*Gardiner v. Walmart, Inc.*,

     2021 WL 4992539 (N.D. Cal. July 28, 2021) ...........................................................7

*Gardner v. Health Net, Inc.*,

     2010 WL 11597979 (C.D. Cal. Aug. 12, 2010).................................................10, 13

*Greenstein v. Noblr Reciprocal Exch.*,

     2022 WL 472183 (N.D. Cal. Feb. 15, 2022) .....................................................3, 4, 5

*Hadley v. Kellogg Sales Co.*,

     243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................13

*Hameed-Bolden v. Forever 21 Retail, Inc.*,

     2018 WL 6802818 (C.D. Cal. Oct. 1, 2018).............................................................7

*Hassell v. Uber Techs., Inc.*,

     2020 WL 7173218 (N.D. Cal. Dec. 7, 2020)............................................................6

*Havird Oil Co. v. Marathon Oil Co.*,
   149 F.3d 283 (4th Cir. 1998) .......................................................................14, 15

*Huynh v. Quora, Inc.*,
   508 F. Supp. 3d 633 (N.D. Cal. Dec. 21, 2020)....................................................6

*I.C. v. Zynga, Inc.*,
   --- F. Supp. 3d ---, 2022 WL 2252636 (N.D. Cal. Apr. 29, 2022)...........................2, 3, 4

*In re Banner Health Data Breach Litig.*,
   2017 WL 6763548 (D. Ariz. Dec. 20, 2017) ........................................................10

*In re iPhone Application Litig.*,
   6 F. Supp. 3d 1004 (N.D. Cal. 2013) ..................................................................12

*In re LinkedIn User Privacy Litig.*,
   932 F. Supp. 2d 1089 (N.D. Cal. 2013) ................................................................5

*In re Nexus 6P Prods. Liab. Litig.*,
   293 F. Supp. 3d 888 (N.D. Cal. 2018) ................................................................12

*In re Sears, Roebuck & Co. Mkt'g & Sales Pracs. Litig.*,
   2009 WL 3460218 (N.D. Ill. Oc. 20, 2009)..........................................................15

*In re Sling Media Slingbox Advert. Litig.*,
   202 F. Supp. 3d 352 (S.D.N.Y. 2016)..................................................................15

*In re Sonic Corp. Customer Data Sec. Breach Litig.*,
   2020 WL 3577341 (N.D. Ohio July 1, 2020) ........................................................8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   903 F. Supp. 2d 942 (S.D. Cal. 2012)................................................................7, 9

*In re SuperValu, Inc.*,
   925 F.3d 955 (8th Cir. 2019) .............................................................................8

*In re Uber Techs., Inc., Data Sec. Breach Litig.*,
   2019 WL 6522843 (C.D. Cal. Aug. 19, 2019)........................................................6

*In re Yahoo! Inc. Data Sec. Breach Litig.*,
   313 F. Supp. 3d (N.D. Cal. 2018) ......................................................................13

iv

*Johnson v. Int'l Labs., LLC,*
    2019 WL 1877289 (E.D. Ky. Apr. 26, 2019) ..................................................................15

*Kearns v. Ford Motor Co.,*
    567 F.3d 1120 (9th Cir. 2009) .......................................................................................12

*Kuhns v. Scottrade, Inc.,*
    868 F.3d 711 (8th Cir. 2017) ...........................................................................................9

*Kwikset Corp. v. Superior Court,*
    51 Cal. 4th 310 (2011) ...................................................................................................11

*Lewis v. Mercedes-Benz USA, LLC,*
    530 F. Supp. 3d 1183 (S.D. Fla. 2021) ..........................................................................15

*Low v. LinkedIn Corp.,*
    2011 WL 5509848 (N.D. Cal. Nov. 11, 2011) ........................................................3, 5, 6

*Maag v. U.S. Bank, Nat'l Ass'n.,*
    2021 WL 5605278 (S.D. Cal. Apr. 8, 2021)..................................................................14

*Maxwell v. Unilever U.S., Inc.,*
    2014 WL 4275712 (N.D. Cal. Aug. 28, 2014) ..............................................................12

*Mayes v. Bryan,*
    139 Cal. App. 4th 1075 (2006) .......................................................................................9

*Mehta v. Robinhood Fin. LLC,*
    2021 WL 6882377 (N.D. Cal. May 6, 2021) ..................................................................8

*Mirkin v. Wasserman,*
    5 Cal. 4th 1082 (1993) .....................................................................................................8

*Morello v. Kenco Toyota Lift,*
    2015 WL 1400582 (E.D. Pa. Mar. 26, 2015)..................................................................8

*Mountain View Surgical Ctr. v. Cigna Health Corp.,*
    2015 WL 5456592 (C.D. Cal. Sept. 17, 2015) ..............................................................10

*Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.,*
    96 F.3d 1151 (9th Cir. 1996) .........................................................................................11

v

*Peterson v. Cellco P'Ship*,

    164 Cal. App. 4th 1583 (2008) ........................................................................11

*Pietzak v. Microsoft Corp.*,

    2015 WL 7888408 (C.D. Cal. Nov. 17, 2015)................................................11

*Pruchnicki v. Envision Healthcare Corp.*,

    845 F. App'x 613 (9th Cir. 2021) ...........................................................7, 9, 10

*Pryor v. CCEC, Inc.*,

    571 S.E.2d 454 (Ga. App. 2002).....................................................................15

*Quiroz v. Seventh Ave. Ctr.*,

    140 Cal. App. 4th 1256 (2006) .........................................................................9

*Rent-A-Ctr., Inc. v. Canyon TV & Appliance Rental, Inc.*,

    944 F.2d 597 (9th Cir. 1991) ............................................................................6

*Shepard v. DineEquity, Inc.*,

    2009 WL 8518288 (D. Kan. Sept. 25, 2009) .................................................15

*Sion v. SunRun, Inc.*,

    2017 WL 952953 (N.D. Cal. Mar. 13, 2017)...................................................7

*Sonner v. Premier Nutrition Corp.*,

    971 F.3d 834 (9th Cir. 2020) ......................................................................6, 11

*Spokeo v. Robins*,

    578 U.S. 330 (2016)..........................................................................................2

*Stasi v. Immediate Health Grp. Corp.*,

    501 F. Supp. 3d 898 (S.D. Cal. 2020)..............................................................8

*Stein v. Sprint Corp.*,

    22 F. Supp. 2d 1210 (D. Kan. 1998)...............................................................15

*Strautins v. Trustwave Holdings, Inc.*,

    27 F. Supp. 3d 871 (N.D. Ill. 2014) .................................................................2

*Svenson v. Google Inc.*,

    2016 WL 8943301 (N.D. Cal. Dec. 21, 2016) .................................................5

vi

*T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*,

    83 F. Supp. 3d 855 (N.D. Cal. 2015) ................................................................10

*Terpin v. AT&T Mobility, LLC*,

    399 F. Supp. 3d 1035 (C.D. Cal. 2019) ............................................................10

*Tiismann v. Linda Martin Homes Corp.*,

    637 S.E.2d 14 (Ga. 2006)..................................................................................15

*Torres v. Wendy's Int'l, LLC*,

    2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ..................................................14

*Travis v. Assured Imaging LLC*,

    2021 WL 1862446 (D. Ariz. May 10, 2021) ...................................................5, 6

*U.S. Ecology, Inc. v. State*,

    129 Cal. App. 4th 887 (2005) ............................................................................10

*Williams v. Apple, Inc.*,

    449 F. Supp. 3d 892 (N.D. Cal. 2020) ..............................................................12

*Worldwide Media, Inc. v. Twitter, Inc.*,

    2018 WL 5304852 (N.D. Cal. Oct. 24, 2018)....................................................11

*Young v. Facebook, Inc.*,

    790 F. Supp. 2d 1110 (N.D. Cal. 2011) ............................................................10

*Yunker v. Pandora Media, Inc.*,

    2013 WL 1282980 (N.D. Cal. Mar. 26, 2013).....................................................5

**STATUTES, RULES, AND REGULATIONS**

<u>**Federal**</u>

15 U.S.C. § 45(n) ...................................................................................................12

Fed. R. Civ. P. 8 ......................................................................................................13

Fed. R. Civ. P. 9(b) ...........................................................................................12, 15

Fed. R. Civ. P. 11 ......................................................................................................3

Fed. R. Civ. P. 12(b) ............................................................................................2, 7

1

**States**

2   Cal. Civ. Code Ann. § 1798.81.5 ...................................................................................13

3   Cal. Civ. Code Ann. § 1798.150 ....................................................................................13

4   Fla. Stat. Ann. § 501.211 ...............................................................................................14

5   Ga. Code Ann. § 10-1-399 .............................................................................................14

6   Ill. Comp. Stat. Ann. § 505/10a .....................................................................................14

7   Ill. Comp. Stat. Ann. § 510/3 .........................................................................................14

8   Ind. Code Ann. § 24-5-0.5 .......................................................................................14, 15

9   Kan. Stat. Ann. § 50-7a01 .............................................................................................14

10  Kan. Stat. Ann. § 50-626 ...............................................................................................15

11  Kan. Stat. Ann. § 50-634 ...............................................................................................14

12  Ky. Rev. Stat. Ann. § 365.732 .......................................................................................14

13  Ky. Rev. Stat. Ann. § 367.220 .......................................................................................14

14  N.J. Stat. Ann. § 56:8-2.................................................................................................15

15  N.J. Stat. Ann. § 56:8-161 .............................................................................................14

16  S.C. Code Ann. § 39-5-140............................................................................................14

17  Utah Code Ann. § 13-11a-4 ...........................................................................................14

18

19

20

21

22

23

24

25

26

27

28

1

## INTRODUCTION

2

In early November 2021, Robinhood announced that "an unauthorized third party obtained

3 access to a limited amount of personal information for a portion of [its] customers"—specifically,

4 their names or email addresses.  For a very small subset of those customers, additional

5 information—date of birth, zip code, or phone numbers—was also exposed.

6

Plaintiffs immediately filed suit, making the same boilerplate allegations found in every

7 data-security case and claiming an array of speculative injuries, all implausible in light of the low

8 sensitivity of the personal information that had been disclosed here.  Seven months later, they filed

9 their operative amended complaint.  None of the twenty-five Plaintiffs specifies what personal

10 information of theirs was accessed by the third party.  And despite the time that has passed, while

11 six of the Plaintiffs allege non-actionable injuries that they do not plausibly allege were traceable

12 to the Robinhood data security incident, *nineteen* of them fail to allege any harm at all.  All

13 Plaintiffs nonetheless assert twenty-four causes of action and seek to represent a putative class.

14

Not every data security incident must be followed by a class action.  This case proves the

15 point.  None of the Plaintiffs has standing, and this Court lacks subject-matter jurisdiction to hear

16 their broad and thinly pleaded requests for equitable relief.  Beyond that, none of Plaintiffs' causes

17 of action is sufficiently alleged to meet the pleading standard.  The complaint should be dismissed.

18

## BACKGROUND

19

Robinhood is "a financial services company that allows its … customers to trade stocks,

20 exchange-traded funds, and cryptocurrencies through its websites and mobile application."  CAC

21 ¶ 41.[1]  The twenty-five named plaintiffs are allegedly Robinhood customers who "entered into

22 contracts" with Robinhood.  *Id.* ¶¶ 12-36, 151, 164.  On November 8, 2021, Robinhood announced

23 that on November 3, "[a]n unauthorized third party obtained access to a limited amount of personal

24

25    [1] Robinhood Markets, Inc. is a holding company listed on the Nasdaq Global Select Market.  It
owns 100% of, and operates its business through, its cryptocurrency-services subsidiary
26 Robinhood Crypto, LLC, its brokerage-services subsidiary Robinhood Financial LLC, and its
clearing-services subsidiary Robinhood Securities, LLC.  The complaint does not include any
27 well-pled factual allegations about the role any Robinhood defendant played in the events giving
rise to this case.  While Robinhood does not herein move to dismiss any of the individual entities
28 for lack of specific allegations as to its role or supposed liability at this time, each defendant entity
preserves and does not waive all available defenses to Plaintiffs' claims.

1    information for a portion of [its] customers." *Id.* ¶ 49.  That information comprised "a list of email

2    addresses for approximately five million people, and full names for a different group of

3    approximately two million people," and "for a more limited number of people—approximately

4    310 in total—additional personal information, including name, date of birth, and zip code was

5    exposed, with a subset of approximately 10 customers having more extensive account details

6    revealed." *Id.*  As Robinhood made clear, "no Social Security numbers, bank account numbers, or

7    debit card numbers were exposed." *Id.*  On November 16, Robinhood updated its November 8

8    announcement to state that other limited information, including phone numbers, may have been

9    disclosed in the incident for certain customers. *Id.* ¶ 50.  The current litigation is the result of three

10   putative class actions filed between November 10 and December 1, 2021.  Those cases were

11   consolidated, and Plaintiffs filed an amended consolidated complaint on May 31, 2022.

12                                           **ARGUMENT**

13   **I.    THE COURT LACKS SUBJECT MATTER JURISDICTION UNDER 12(b)(1)**

14          **BECAUSE PLAINTIFFS LACK ARTICLE III STANDING**

15          To establish Article III standing, Plaintiffs must show a "concrete and particularized"

16   "injury in fact [] that is fairly traceable to the challenged conduct of the defendant" and "that is

17   likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338-39

18   (2016).  Plaintiffs' case fails at the threshold because they fail to specify what personal information

19   of theirs was exposed in the incident—even though each of them claims to have "received an email

20   from Robinhood informing [him/her] of the [incident] and that [his or her] PII had been stolen."

21   CAC ¶¶ 12-36.  "[I]n data breach cases, courts must examine the nature of the specific information

22   at issue to determine whether privacy interests were implicated at all[;] [o]therwise, every data

23   breach (or any situation in which one loses control of information) would confer standing,

24   regardless of whether private information is exposed." *I.C. v. Zynga, Inc.*, --- F. Supp. 3d ---, 2022

25   WL 2252636, at *8 (N.D. Cal. Apr. 29, 2022).  Plaintiffs point only to Robinhood's announcement

26   about the data-security incident, without alleging to which group of affected persons they belong.

27   *See* CAC ¶¶ 49-50.  Given the centrality of this information to the standing inquiry, that failure

28   alone warrants dismissal. *Cf. Strautins v. Trustwave Holdings, Inc.*, 27 F. Supp. 3d 871, 880-82

1   (N.D. Ill. 2014) (holding that plaintiff failed plausibly to allege that her PII was stolen and thus

2   failed to establish standing when she relied solely on announcement that certain tax filers' PII

3   might have been affected).

4          Nor can Plaintiffs rely on their general allegation that the incident resulted in the disclosure

5   of "full names, email addresses, dates of birth, zip codes, and other PII." CAC ¶ 3.  Again, none

6   of the Plaintiffs plausibly alleges that anything other than their names or email addresses was

7   exposed.  And even if they could allege, consistent with Rule 11, that additional information—

8   their dates of birth, zip codes, or other unspecified PII—was disclosed, that still would not suffice

9   to give them standing.  Where exposed personal information is at issue, "standing turn[s] on

10  whether the degree of sensitive information present[s] an imminent and credible risk of harm."

11  *Greenstein v. Noblr Reciprocal Exch.*, 2022 WL 472183, at *3 (N.D. Cal. Feb. 15, 2022).  While

12  the disclosure of SSNs or credit card information might suffice to show risk of harm such as

13  identity theft or fraud, "low sensitivity" information like names and addresses does not suffice.

14  *See id.* at *3-4.  Here, Plaintiffs' case involves only the type of "low sensitivity" information that

15  courts have routinely found insufficient to show an imminent risk of identity theft.  *See, e.g.*, *id.*,

16  at *4 (no credible future of threat when "the exposed PI was limited only to Plaintiffs' names,

17  address, and driver's license numbers"); *Antman v. Uber Techs., Inc.*, 2015 WL 6123054, at *11

18  (N.D. Cal. Oct. 19, 2015) (no credible risk of identity theft when plaintiffs allege merely "theft of

19  names and driver's license[,] [w]ithout a hack of information such as [SSN]s, account numbers, or

20  credit card numbers"); *Low v. LinkedIn Corp.*, 2011 WL 5509848, at *6 (N.D. Cal. Nov. 11, 2011)

21  (no standing where plaintiff did not allege any "highly sensitive personal data" had been stolen).

22         Unsurprisingly then, nineteen of the twenty-five Plaintiffs do not allege any harm as a result

23  of the incident.  They have not been injured in a constitutionally significant sense by the disclosure

24  of their low-sensitivity information.  The other six Plaintiffs allege injuries that do not suffice as a

25  matter of law to establish standing, and in any event are not plausibly connected the incident:

26         **Glinoga** claims that he has "receive[d] numerous spam emails since the Breach occurred."

27  CAC ¶ 94.  But "receiving spam or mass mail does not constitute an injury in fact."  *Zynga*, 2022

28  WL 2252636, at *9 (collecting cases).

1        **Ardizzone** says that "someone filed for unemployment insurance using her name, address,

2   and social security number." CAC ¶ 95. But she does not allege that her address or social security

3   number was disclosed in the incident; and in any event a bare allegation that a plaintiff's data were

4   "fraudulently used to apply for unemployment benefits" is insufficient to establish standing,

5   *Greenstein*, 2022 WL 472183, at *5.

6        **Barnett** says that she "found two fraudulent charges on her debit card" and **Benoit** says

7   "her bank information [was] used to lease a car." CAC ¶¶ 96-97. But neither alleges that they

8   suffered any monetary loss, and "allegations of fraudulent activity with no associated monetary

9   loss are insufficient to confer standing." *Ables v. Brooks Bros. Grp., Inc.*, 2018 WL 8806667, at

10  *4 (C.D. Cal. June 7, 2018) (collecting cases); *Dugas v. Starwood Hotels & Resorts Worldwide,*

11  *Inc.*, 2016 WL 6523428, at *4 (S.D. Cal. Nov. 3, 2016) ("As to fraudulent charges, Plaintiff does

12  not assert that he suffered any unreimbursed losses from the unauthorized use of his credit card or

13  that he was unable to use credit thereafter."). Moreover, given the types of information at issue,

14  neither Barnett nor Benoit "plausibly allege[s] that any of [their] information stolen in the data

15  breach could be used to set up an account with a financial institution, such as [SSN]." *Zynga*, 2022

16  WL 2252636, at *10; *see also Greenstein*, 2022 WL 472183, at *7-8 ("it would be difficult to trace

17  any future identity theft or fraud to [the unauthorized data breach]" that allegedly compromised

18  consumers' names, addresses, and driver's license numbers).

19       Both **Cooper** and **Carter** claim that they were "locked out of [their] Robinhood

20  account[s]" (CAC ¶¶ 98-99), but that is not a cognizable injury. In any event, those account lock-

21  outs are not alleged to be, and indeed are not, plausibly traceable to the limited types of information

22  at issue, *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019) (alleged "forced

23  logouts" not traceable to the data breach).

24       Having failed to plead that they have suffered any constitutionally significant injury from

25  the data-security incident, or to plausibly allege a connection between the information that was

26  disclosed and any alleged harm, Plaintiffs speculate on the harms that they say might befall them

27  in the future. None gives them standing to sue.

28

*First*, Plaintiffs' vague speculation that they "may … incur out-of-pocket costs for protective measures" (CAC ¶ 100) in the future cannot support standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013). Regardless, given that none of the Plaintiffs alleges that their credit card information or sensitive financial identifiers were compromised, there will be no need for them to incur "credit report fees, credit freeze fees or similar costs" (CAC ¶ 100). *See Greenstein*, 2022 WL 472183, at *6 (plaintiffs fail to "sufficiently allege that [credit monitoring] services were reasonable and necessary" and "cannot manufacture standing through costs incurred in monitoring their credit"); *Ables*, 2018 WL 8806667, at *4 ("allegations of unspecified expenses to mitigate, in an unspecified manner, unspecified effects of a breach" do not satisfy Article III).

*Second*, Plaintiffs cannot rely on the alleged diminished value of their personal information. Plaintiffs do not allege "a market for [the] personal information" where "[their] ability to participate in that market" is "impaire[d]." *Svenson v. Google Inc.*, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016). They assert only that there is an "internet black market" where one "cybercriminal" offered to sell the information. CAC ¶¶ 7, 53, 103. But an *illegal* market is obviously not a market in which *Plaintiffs* could or would participate. Separately, even taking that one cybercriminal's alleged post as true, at most it shows that names and email addresses are for sale. *See id.* ¶¶ 49, 53. Plaintiffs fail to and cannot explain how their individual email addresses or names, "when not disclosed, ha[ve] [any] independent" value to Plaintiffs. *Greenstein*, 2022 WL 472183, at *5; *Low*, 2011 WL 5509848, at *5 (similar). Relatedly, Plaintiffs fail to plead how that information became *less* valuable as a result of the incident, or that they attempted to sell such information but could not because of the incident. Faced with similar allegations, courts have consistently declined to find standing. *See, e.g.*, *Yunker v. Pandora Media, Inc.*, 2013 WL 1282980, at *4 (N.D. Cal. Mar. 26, 2013) (collecting cases where plaintiffs failed to allege facts sufficient to show injury-in-fact based on diminution in value of their personal information); *Travis v. Assured Imaging LLC*, 2021 WL 1862446, at *9 (D. Ariz. May 10, 2021) (same).

*Third*, Plaintiffs' benefit-of-the-bargain theory (CAC ¶ 102) does not support standing because Plaintiffs fail plausibly to allege that they specifically bargained for a particular level of security, as opposed to other features of Robinhood's services. *In re LinkedIn User Privacy Litig.*,

1  932 F. Supp. 2d 1089, 1093 (N.D. Cal. 2013) (plaintiffs fail to allege that they "actually provided

2  consideration for the security services which they claim were not provided"); *see also Travis*, 2021

3  WL 1862446, at *10 (similar and collecting cases within the Ninth Circuit).

4        *Finally*, Plaintiffs mention their "loss of privacy" (CAC ¶ 103(d)) and "stress, nuisance and

5  annoyance" (*id.* ¶ 7(c)) in passing without alleging whether and how they have suffered any

6  damages or harm.  This is insufficient to establish standing.  *In re Uber Techs., Inc., Data Sec.*

7  *Breach Litig.*, 2019 WL 6522843, at *5 (C.D. Cal. Aug. 19, 2019) (conclusory allegation of loss

8  of privacy does not establish standing); *Low*, 2011 WL 5509848, at *3 (plaintiff failed to allege

9  facts sufficient to establish standing under a theory of emotional harm).

10       Since Plaintiffs fail to allege constitutionally actionable or plausible past or future harms,

11 the Complaint should be dismissed for lack of standing.

12 **II.   PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF**

13       Plaintiffs must show that they lack "an adequate remedy at law" to obtain equitable relief

14 such as restitution, declaratory relief, or an injunction.  *Sonner v. Premier Nutrition Corp.*, 971

15 F.3d 834, 842-43 (9th Cir. 2020).  Plaintiffs fail to do so and demonstrably cannot do so, because

16 they bring legal claims based on the same conduct, seeking to remedy the same alleged harm.  *See,*

17 *e.g.*, *Hassell v. Uber Techs., Inc.*, 2020 WL 7173218, at *9 (N.D. Cal. Dec. 7, 2020) (availability

18 of civil penalties bars equitable relief); *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 662 (N.D. Cal.

19 Dec. 21, 2020) ("[w]here the claims pleaded by a plaintiff *may* entitle her to an adequate remedy

20 at law, equitable relief is unavailable") (emphasis in original and collecting cases).

21       Likewise, Plaintiffs' claims for injunctive relief fail because they "are based upon the same

22 facts as their claims for monetary relief, which indicates that their harms are compensable through

23 money damages, and precludes a finding of irreparable harm."  *Bohnak v. Marsh & McLennan*

24 *Cos., Inc.*, 2022 WL 158537, at * 6 (S.D.N.Y. Jan. 17, 2022) (dismissing injunction claims); *see*

25 *also Rent-A-Ctr., Inc. v. Canyon TV & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)

26 (mere "economic injury" "does not support a finding of irreparable harm").  In any event, Plaintiffs

27 fail adequately to allege any irreparable harm, as is required for injunctive relief.  They allege only

28 in conclusory fashion that they will "suffer irreparable injury" (CAC ¶ 192), without explaining

how or specifying what irreparable injury they will allegedly suffer.  Plaintiffs also fail to explain how injunctive relief would remedy any such injury.  This is insufficient to support a claim for the extraordinary relief of an injunction.  *Adams v. Cole Haan, LLC*, 2020 WL 5648605, at *3 (C.D. Cal. Sept. 3, 2020) ("conclusory statement about irreparable injury cannot survive [*Iqbal*]").

Plaintiffs therefore cannot pursue the equitable relief that they seek for nearly all their claims because they fail to allege the requisite lack of an adequate legal remedy and irreparable harm.[2]  This requires dismissal of their requests for injunctive relief across the board, as well as dismissal of their unjust enrichment, declaratory judgment, and UCL claims in their entirety.

## III.   EACH CLAIM SEPARATELY FAILS UNDER RULE 12(b)(6)

### A.   Plaintiffs Fail To State A Negligence Claim (Counts I & II)

#### 1.   The economic loss rule bars the negligence claim

The economic loss rule bars Plaintiffs' negligence claim because they do not allege any "physical harm (i.e., personal injury or property damage)."  *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 959-61 (S.D. Cal. 2012).  Plaintiffs' allegations about lost time or the diminished value of their personal information do not suffice to avoid the economic loss rule because, as the Ninth Circuit has recognized, neither type of alleged harm supports compensable damages in negligence claims.  *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021).  Plaintiffs' conclusory allegations of emotional stress are equally insufficient.  *Sion v. SunRun, Inc.*, 2017 WL 952953, at *2 (N.D. Cal. Mar. 13, 2017) (plaintiff "offer[ed] no specific facts about how she suffered [mental and emotional distress]"); *Hameed-Bolden v. Forever 21 Retail, Inc.*, 2018 WL 6802818, at *5 (C.D. Cal. Oct. 1, 2018) ("Plaintiffs must set forward facts as to the types of non-economic damage they suffered.").

No exception to the economic loss rule applies here.  The "special relationship" exception (CAC ¶ 128) does not apply where, as here, plaintiffs are "in privity of contract" with defendants (*id.* ¶ 151).  *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *6 (N.D. Cal. July 28, 2021) (collecting cases).  Nor does the exception apply given that Plaintiffs fail to allege any transaction

---

[2] The only exceptions are Counts I & II (negligence) and Counts XIII & XXI (statutory claims).

with Robinhood "was intended to specifically benefit [them] in a way separate from other customers." *Id.*

### 2.    Plaintiffs fail to plead the elements of a negligence claim

Plaintiffs also fail plausibly to allege a duty of care, damages, or causation, as they must to state a claim for negligence.

*First*, Plaintiffs fail to allege facts giving rise to a duty of care obligating Robinhood to take special steps to secure their names and email addresses or other "low-sensitivity" information. While some courts have found a duty of care to secure plaintiffs' "highly sensitive personal and financial information," *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *6 (N.D. Cal. May 6, 2021), no duty of care arises where the foreseeability of harm to the plaintiff and the degree of certainty that the plaintiff has been injured are both low given the low-sensitivity nature of the information at issue. *Cf. Stasi v. Immediate Health Grp. Corp.*, 501 F. Supp. 3d 898, 915 (S.D. Cal. 2020) (imposing duty to safeguard sensitive medical information based on those factors).

Nor do the FTC Act, the FTC Guide, the unspecified "many other FTC pronouncements," or the NIST Guide (CAC ¶¶ 47-78) impose any duty of care under common law. *See, e.g.*, *In re Sonic Corp. Customer Data Sec. Breach Litig.*, 2020 WL 3577341, at *6 (N.D. Ohio July 1, 2020) (rejecting FTC Act as negligence predicate because it "does not lay out objective standards"); *In re SuperValu, Inc.*, 925 F.3d 955, 963-64 (8th Cir. 2019) ("[i]mplying a cause of action [based on the FTCA] would be inconsistent with Congress's anticipated enforcement scheme"). Plaintiffs cannot rely on the more discretionary industry standards, either. *Morello v. Kenco Toyota Lift*, 2015 WL 1400582, at *3 (E.D. Pa. Mar. 26, 2015) ("Industry standards cannot be used to create a duty when none would otherwise be owed."). Indeed, judicial deference to Congress (and the States) is especially warranted where, as here, various legislatures have already prescribed data privacy standards. *See* CAC ¶¶ 208 (CCRA), 214 (CCPA); *Mirkin v. Wasserman*, 5 Cal. 4th 1082, 1104-05 (1993) (declining to expand securities fraud liability when "the Legislature has already acted," noting "courts should be hesitant to impose [new tort duties] when to do so would involve complex policy decisions, especially when such decisions are more appropriately the subject to legislative deliberation and resolution"); *Cmty. Bank of Trenton v. Schnuck Mkts., Inc.*, 887 F.3d

803, 816-17 (7th Cir. 2018) (declining to impose "'a new common law duty' to safeguard information" based on similar reasoning).

*Second*, Plaintiffs fail to plead "appreciable and actual damage" as a result of Robinhood's conduct. *Sony*, 903 F. Supp. 2d at 959-62. Nineteen out of twenty-five Plaintiffs do not allege *any* compensable damages. *See supra* p. 3; *Pruchnicki*, 845 F. App'x at 614-15 ("potential fraud and identity theft," "lost time," "emotional distress," and "diminution in value of [plaintiff's] personal information" insufficient to show damages for negligence). While six Plaintiffs claim that they encountered suspicious activities, none of them has adequately pleaded any actual damages from those activities. *See supra* pp. 3-6. They further fail to allege that any supposed failure by Robinhood to take security measures was a "substantial factor" in those activities. *Mayes v. Bryan*, 139 Cal. App. 4th 1075, 1092 (2006). Specifically, Plaintiffs fail to allege facts beyond mere speculation as to whether Robinhood had unreasonable security practices or how its conduct caused the breach or any of the alleged damages. *See* CAC ¶¶ 121, 129, 131. Indeed, their bare-thread allegations are belied by the low sensitivity of the information disclosed in the incident and also by the timely announcement and notice Robinhood issued to the customers. Plaintiffs' "naked assertion" is essentially based on "the implied premise that because data was hacked, [Robinhood]'s protections must have been inadequate" and cannot survive a motion to dismiss. *Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 717-18 (8th Cir. 2017).

### 3.    Plaintiffs' negligence per se "claim" fails

Negligence *per se* is not "an independent cause of action," *Quiroz v. Seventh Ave. Ctr.*, 140 Cal. App. 4th 1256, 1285-86 (2006), but only a "doctrine" under which a statute may establish the standard of care, *Dent v. NFL*, 902 F.3d 1109, 1117 (9th Cir. 2018). Plaintiffs fail to point to any statutory duty of care (*supra* p. 8), so their negligence *per se* "claim" fails.

### B.    Plaintiffs Fail To State A Breach Of Contract Claim (Count III)

Plaintiffs' breach of contract claim fails for the same reasons as their negligence claim: (1) they fail plausibly to allege any cognizable damages, *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1015 (9th Cir. 2000), and (2) they do not identify any failure to implement

1    reasonable security measures that was a "substantial factor" in bringing about their alleged injuries,

2    *U.S. Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 909 (2005).

3         Moreover, this claim also fails because Plaintiffs do not point to any "specific provisions

4    in the contract creating the obligation [Robinhood is] said to have breached." *Young v. Facebook,*

5    *Inc.*, 790 F. Supp. 2d 1110, 1117 (N.D. Cal. 2011).  Plaintiffs cite two "promises" purportedly

6    made by Robinhood.  CAC ¶¶ 46-47.  But those statements "do not contain reasonably

7    ascertainable express promises to do anything not already required by law" and therefore are not

8    supported by consideration.  *In re Banner Health Data Breach Litig.*, 2017 WL 6763548, at *3-4

9    (D. Ariz. Dec. 20, 2017) (declining to enforce similar language in privacy policy).  Nor do those

10   statements make any "promise on [Robinhood] to *prevent* … unauthorized access."  *Gardner v.*

11   *Health Net, Inc.*, 2010 WL 11597979, at *6 (C.D. Cal. Aug. 12, 2010) (emphasis added).

12        **C.      Plaintiffs Fail To State An Implied Contract Claim (Count IV)**

13        Like their express contract claim (*supra* III.B), Plaintiffs' implied contract claim should be

14   dismissed both for its failure plausibly to allege any cognizable damages, *Pruchnicki*, 845 F. App'x

15   at 614-15, and for failure to allege a breach that was a substantial factor in bringing about their

16   alleged injuries.  *T & M Solar & Air Conditioning, Inc. v. Lennox Int'l Inc.*, 83 F. Supp. 3d 855,

17   872 (N.D. Cal. 2015) ("The elements of stating a claim for breach of an express or implied contract

18   are the same.").  The claim also independently fails for two additional reasons.

19        *First*, Plaintiffs cannot distinguish their breach of express contract claim from the

20   incompatible breach of implied contract claim—both claims are premised on the allegation that

21   Plaintiffs "entered into contracts" with Robinhood to protect their personal information.  *Compare*

22   CAC ¶ 151 *and id.* ¶ 164.  The implied contract claim should be dismissed because, based on the

23   Complaint, a "valid express contract cover[s] the same subject matter" and Plaintiffs "ha[ve] not

24   sufficiently alleged a distinct claim for a breach of implied contract."  *T & M Solar*, 83 F. Supp.

25   3d at 873; *see also Mountain View Surgical Ctr. v. Cigna Health Corp.*, 2015 WL 5456592, at *2

26   (C.D. Cal. Sept. 17, 2015).

27        *Second*, Plaintiffs "fail[] to allege the parties' conduct that form[ed] the basis of the implied

28   contract."  *Terpin v. AT&T Mobility, LLC*, 399 F. Supp. 3d 1035, 1049 (C.D. Cal. 2019) (rejecting

implied contract claim where complaint alleged only that "opening of an AT&T wireless account" created implied contract); *Worldwide Media, Inc. v. Twitter, Inc.*, 2018 WL 5304852, at *7 (N.D. Cal. Oct. 24, 2018) (dismissing claim where plaintiffs "d[id] not allege any conduct by Twitter that g[ave] rise to the alleged implied contract").

**D.     Plaintiffs Fail To State An Unjust Enrichment Claim (Count V)**

In addition to being barred under *Sonner* (*see supra* II), Plaintiffs' unjust enrichment claim should be dismissed because (1) as stated above, an express contract encompasses the same subject matter (*supra* III.B & C), *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996) ("unjust enrichment … does not lie when an enforceable, binding agreement exists defining the rights of the parties"); and (2) Plaintiffs fail to and cannot allege that Robinhood received any benefit from the data-security incident, *see Peterson v. Cellco P'Ship*, 164 Cal. App. 4th 1583, 1593 (2008) (unjust enrichment claim requires "receipt of a benefit and the unjust retention of the benefit at the expense of another").

**E.     The California Plaintiffs To State A UCL Claim (Count VII)**

**1.     The California Plaintiffs fail to plead economic injury or reliance**

In addition to being barred under *Sonner* (*see supra* II), the California Plaintiffs' UCL claim should be dismissed for failure to allege necessary elements of the claim.

To bring a UCL claim, a plaintiff must plead "lost money or property," which is even "more difficult to satisfy than … injury in fact." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 323-25 (2011). The California Plaintiffs, Fisher and Glinoga, allege no such loss. Fisher says nothing about how he was injured. And while Glinoga alleges that he "received notice from credit monitoring software that his email address was compromised" and that he "continues to receive numerous spam emails" (CAC ¶ 94), those are not events that are compensable under the UCL. *See Pietzak v. Microsoft Corp.*, 2015 WL 7888408, at *2 (C.D. Cal. Nov. 17, 2015) (allegations that "receipt of unwanted text messages [caused] … 'embarrassment and emotional harm'" insufficient to establish standing under the UCL).

**2.     None of the three UCL prongs applies**

*Unlawful prong.* None of the three predicates for the "unlawful" claim—the FTC Act, the

California Customer Records Act, or the California Consumer Privacy Act—supports an actionable UCL claim.  CAC ¶ 198(d), (g), (i), (j).  Neither Fisher nor Glinoga alleges a violation of the FTCA:  they do not plausibly allege any injury, let alone a "substantial" one, nor do they connect their alleged injuries to any unreasonable security practice.  15 U.S.C. § 45(n).  And they cannot rely on the CCRA or the CCPA for the reasons discussed below.  *Infra* III.F.

*Fraudulent prong.*  The Complaint falls short of Rule 9(b)'s heightened pleading standard, which applies to UCL claims that sound in fraud.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009).  *First*, the California Plaintiffs fail to allege with particularity their actual reliance on any alleged misrepresentation or omission.  *See Maxwell v. Unilever U.S., Inc.*, 2014 WL 4275712, at *4 (N.D. Cal. Aug. 28, 2014) (actual reliance required under UCL "unlawful" and "unfair" prongs where "predicate unlawfulness is misrepresentation and deception").  The Complaint alleges that Robinhood "misrepresent[ed]" that it "would protect the privacy and confidentiality of," and "would comply with common law and statutory duties pertaining to the security and privacy of," Fisher's and Glinoga's personal information.  CAC ¶ 198 (f)-(i).  But no allegation shows that Fisher or Glinoga "actually read" those statements, *Williams v. Apple, Inc.*, 449 F. Supp. 3d 892, 912-13 (N.D. Cal. 2020), much less that those statements were a "substantial factor" in their decision to use Robinhood's services, *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1019-20 (N.D. Cal. 2013).  *Second*, the Complaint is also devoid of any allegation indicating that Robinhood *knew* its security measures were inadequate in any respect relevant to the incident, or that it misrepresented any relevant aspect of its security measures.  *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 927 (N.D. Cal. 2018) ("California law supports [the] common-sense notion that a defendant cannot 'disclose facts of which it was unaware.'"); *see also Baba v. Hewlett-Packard Co.*, 2011 WL 317650, at *4 (N.D. Cal. Jan. 28, 2011) (where UCL claim "arises out of alleged misrepresentations and omissions" plaintiff must "plead the company's knowledge of the putative defect").  Mere "conclusory allegations of knowledge" are insufficient.  *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1138 (N.D. Cal. 2013).

*Unfair prong.*  Where "the unfair business practices alleged under the unfair prong of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs

1    of the UCL, the unfair prong of the UCL cannot survive if the claims under the other two prongs

2    of the UCL do not survive." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1104-05 (N.D.

3    Cal. 2017); *see* CAC ¶ 198.   This is the case here.   In any event, the California Plaintiffs fail

4    adequately to plead "unfair" conduct under any test.   *See Doe v. CVS Pharmacy, Inc.*, 982 F.3d

5    1204, 1214-15 (9th Cir. 2020) (summarizing the tests for UCL unfairness).   Because their public

6    policy argument relies solely on the FTCA, the CCRA, and the CCPA, their claim fails under the

7    tethering test along with their unlawful-prong claim.   *Supra* pp. 11-12.   They cannot satisfy the

8    "substantially injurious" test because they have not alleged any cognizable harm.   *Supra* pp. 3-6;

9    *CVS Pharmacy*, 982 F.3d at 1215 ("conclusory recitation of … UCL's legal standards" does not

10   satisfy Rule 8).   And they do not and cannot allege the incident's impact "outweighs any

11   justification, motive or reason" of Robinhood.   *Gardner*, 2010 WL 11597979, at *11 ("it is not

12   clear that Plaintiffs suffered any injury-in-fact, must less a 'substantial injury'").

13      **F.      The California Plaintiffs Fail To State A CCRA Or CCPA Claim (Counts**

14              **VIII & IX)**

15      The CCRA and the CCPA require businesses to safeguard only certain categories of

16   information against unauthorized access.   Cal. Civ. Code §§ 1798.81.5(d)(1), 1798.150(a)(1); *see*

17   *also In re Yahoo! Inc. Data Sec. Breach Litig.*, 313 F. Supp. 3d, 1113, 1145 (N.D. Cal. 2018).   An

18   individual's name is protected only when it is "in combination with one or more" other kinds of

19   information such as SSN, driver's license number, account number or credit or debit card number;

20   and email addresses are protected only when they are "in combination with a password or security

21   question and answer that would permit access to an online account."   Cal. Civ. Code §

22   1798.81.5(d)(1)(A),  (B),  § 1798.150(a)(1).   The California Plaintiffs fail to allege that the

23   information disclosed in the incident qualifies under the clear statutory requirements.   *Supra* pp.

24   2-3.  Their CCRA and CCPA claims fail at the threshold because Plaintiffs fail to show these two

25   statutes even apply.

26      In addition, for both claims, the California Plaintiffs do not adequately allege that

27   Robinhood failed to "implement and maintain reasonable security procedures and practices."

28   While the complaint pleads a laundry list of "reasonable security measures" (CAC ¶ 190(d)), it

includes no plausible allegations that Robinhood has *not* implemented these measures.  These conclusory and speculative allegations do not suffice.  *See Anderson v. Kimpton Hotel & Rest. Grp., LLC*, 2019 WL 3753308, at *5 (N.D. Cal. Aug. 8, 2019) (dismissing CCRA claim where plaintiffs "fail to allege … any facts to support [their] conclusory allegations" as to defendant's failure to implement and maintain reasonable security measures); *Maag v. U.S. Bank, Nat'l Ass'n.*, 2021 WL 5605278, at *2 (S.D. Cal. Apr. 8, 2021) (dismissing CCPA claim on similar grounds).

### G.    Plaintiffs' Non-California Statutory Claims All Fail (Counts X-XXIV)

*First*, all the non-California state data security claims (Counts XI, XIX, XXI, XXIII) should be dismissed because, like the CCRA and the CCPA, these statutes protect only limited categories of personal information that Plaintiffs do not allege were exposed (*supra* III.F).[3]  There is also a split as to whether New Jersey's data security statute (Count XXIII) provides for a private right of action.[4]

*Second*, all the consumer protection claims suffer one or more fatal flaws:

- All these claims fail because Plaintiffs fail to allege any actual damages or injury or that there is no adequate remedy at law for seeking injunctive relief.[5]

- Counts XIV, XV, and XVII fail to the extent they require pre-suit notice, which Plaintiffs do not allege was sent to Robinhood.[6]

- Counts XVI, XVII, and XX are barred as putative class actions.[7]

- To the extent they sound in fraud, Counts X, XII, XIV, XVII, XX, XXII, XXIV

---

[3] 815 Ill. Compl. Stat. Ann. § 530/5; Kan. Stat. Ann. § 50-7a01(g); Ky. Rev. Stat. Ann. § 365.732(1)(c); N.J. Stat. Ann. § 56:8-161.

[4] *Compare Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *6 (M.D. Fla. Mar. 21, 2017) *with In re Equifax, Inc., Customer Data Sec. Breach Litig.*, 362. F. Supp. 3d 1295, 1341-42 (N.D. Ga. 2019).

[5] 815 Ill. Comp. Stat. Ann. §§ 505/10a, 510/3; *Escabi v. Twins Contracting, LLC*, 2022 WL 1699054, at *20-21 (N.Y. Sup. Ct. 2022); Ind. Code Ann. § 24-5-0.5-4(a); Utah Code Ann. § 13-11a-4(2)(a); *Havird Oil Co. v. Marathon Oil Co.*, 149 F.3d 283, 291 (4th Cir. 1998) (South Carolina); Ga. Code Ann. § 10-1-399; Fla. Stat. § 501.211; Kan. Stat. Ann. § 50-634; Ky. Rev. Stat. Ann. § 367.220(1); *Dewey v. Volkswagon*, 558 F. Supp. 2d 505, 524 (D.N.J. 2008).

[6] Ind. Code Ann. §§ 24-5-0.5-4(a), 24-5-0.5-2(7); Utah Code Ann. § 13-11a-4(5); Ga. Code Ann. § 10-1-399(b).

[7] S.C. Code Ann. § 39-5-140; Ga. Code Ann. § 10-1-399(a); Kan. Stat. Ann. § 50-634(b).

1  (and potentially XVIII) are subject to Rule 9(b), which Plaintiffs fail to meet.[8]  *See supra* p. 12.

2  • To the extent they are based on allegedly deceptive practices, Counts X, XIV, XVII,

3  XX, and XXIV should be dismissed because Plaintiffs fail to allege their reliance on the alleged

4  conduct or causation or both.[9]  *See supra* pp. 3-4, 12.

5  • Counts XIII, XIV, XVI, XVII, XX (and XXIV to the extent it is based on alleged

6  concealment) fail plausibly to allege other required elements, for example, that Robinhood must

7  have "knowledge" or "intent" about the allegedly deceptive conduct or that the alleged deceptive

8  conduct has an impact on a broader "public interest" or consumers at large.[10]  *See supra* p. 12.

9  ## CONCLUSION

10  For these reasons, the Court should dismiss the Consolidated Class Action Complaint in

11  its entirety.

12

13  Respectfully submitted,

14  Dated: June 27, 2022               WILMER CUTLER PICKERING

15                                     HALE AND DORR LLP

16                                     By:   */s/ Michael Bongiorno*

17                                           Michael Bongiorno (*pro hac vice*)
                                             Alan Schoenfeld (*pro hac vice* pending)
                                             Allison Que

18
                                       *Attorneys for Defendants Robinhood Markets, Inc.,*
19                                     *Robinhood Crypto, LLC, Robinhood Financial LLC,*
                                       *Robinhood Securities, LLC*

20

21  [8] *AAVN, Inc. v. WestPoint Home, Inc.*, 2019 WL 1168102, at *2 (N.D. Ill. Mar. 13, 2019); *Bray v. Gamestop Corp.*, 2018 WL 11226516, at *6 (D. Del. Mar. 16, 2018) (Indiana); *Edwards-Astin*

22  *v. Medtronic Minimed, Inc.*, 2008 WL 11319723, at *4 (N.D. Ga. June 4, 2008); *Shepard v. DineEquity, Inc.*, 2009 WL 8518288, at *10 (D. Kan. Sept. 25, 2009); *Johnson v. Int'l Labs., LLC*,

23  2019 WL 1877289, at *3 (E.D. Ky. Apr. 26, 2019); *Dewey*, 558 F. Supp. 2d at 524 (New Jersey). Courts split as to whether a Florida DUTPA claim is subject to Rule 9(b). *See Lewis v. Mercedes-*

24  *Benz USA, LLC*, 530 F. Supp. 3d 1183, 1231 (S.D. Fla. 2021).

25  [9] *De Bouse v. Bayer*, 922 N.E.2d 309, 315 (Ill. 2009); *In re Sears, Roebuck & Co. Mkt'g & Sales Pracs. Litig.*, 2009 WL 3460218, at *5 (N.D. Ill. Oc. 20, 2009) (Indiana); *Tiismann v. Linda Martin*

26  *Homes Corp.*, 637 S.E.2d 14, 17-18 (Ga. 2006); *Stein v. Sprint Corp.*, 22 F. Supp. 2d 1210, 1214-15 (D. Kan. 1998); *Dewey*, 558 F. Supp. 2d at 524 (New Jersey).

27  [10] *In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016); Ind. Code Ann. §§ 24-5-0.5-4(a), 24-5-0.5-2(8); *Havird*, 149 F.3d at 291 (South Carolina); *Pryor v.*

28  *CCEC, Inc.*, 571 S.E.2d 454, 455 (Ga. App. 2002); Kan. Stat. Ann. § 50-626(b); N.J. Stat. Ann. § 56:8-2.

1

## **CERTIFICATE OF SERVICE**

2          I hereby certify that on June 27, 2022, I electronically filed the above document with the

3  Clerk of the Court using CM/ECF which will send electronic notification of such filing to all

4  registered counsel.

5

6   Dated: June 27, 2022                    By:    */s/ Michael Bongiorno*

7                                                   Michael Bongiorno

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28