**SHUB LAW FIRM LLC**
Kevin Laukaitis (*pro hac vice*)
134 Kings Hwy E 2nd Floor
Haddonfield, NJ 08033
Tel: (856) 772-7200
Email: klaukaitis@shublawyers.com

**HELD & HINES, LLP**
Philip M. Hines (*pro hac vice*)
phines@heldhines.com
Danielle A. Scott
(*pro hac vice* forthcoming)
dscott@heldhines.com
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com

**SIRI & GLIMSTAD LLP**
Mason Barney (*pro hac vice*)
mbarney@sirillp.com
Sonal Jain (*pro hac vice*)
sjain@sirillp.com
Elizabeth A. Brehm (*pro hac vice*)
ebrehm@sirillp.com
Sean Nation
(*pro hac vice* forthcoming)
snation@sirillp.com
200 Park Avenue
Seventeenth Floor
New York, NY 10166
Telephone: 212-532-1091
Facsimile: 646-417-5967

*Attorneys for Plaintiffs and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| In re Robinhood Data Security Litigation | Case No. 3:21-cv-08906-JD |
|---|---|
| | **PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS** |
| | Date: August 11, 2022 |
| | Time: 11:00 am |
| | Place: Courtroom 11, 19th Floor |
| | Judge: Hon. James Donato |

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................... iii

INTRODUCTION ..................................................................................................... 1

BACKGROUND ........................................................................................................ 1

ARGUMENT ............................................................................................................. 2

    I.      PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS ...................... 2

    II.    PLAINTIFFS ARE ALSO ENTITLED TO EQUITABLE RELIEF ................... 6

    III.   PLAINTIFFS HAVE STATED A VALID NEGLIGENCE CLAIM .................. 6

        a.     The Economic Loss Doctrine Does Not Apply ........................................ 6

        b.     Plaintiffs Adequately Pled Their Negligence Claims .............................. 8

        c.     Plaintiffs Adequately Pled a Negligence *Per Se* Claim ........................... 9

    IV.   PLAINTIFFS HAVE STATED A VALID BREACH OF CONTRACT
        CLAIM ........................................................................................................ 9

    V.    PLAINTIFFS STATED A VALID BREACH OF IMPLIED CONTRACT
        CLAIM ...................................................................................................... 10

    VI.   PLAINTIFFS HAVE STATED A VALID UNJUST ENRICHMENT
        CLAIM ...................................................................................................... 11

    VII.   THE CALIFORNIA PLAINTIFFS HAVE STATED A VALID UCL
        CLAIM ...................................................................................................... 11

        a.     *Sonner* Does Not Bar Plaintiffs' UCL Claim ...................................... 11

        b.     The California Plaintiffs Have Pled Economic Injury
            and Reliance .......................................................................................... 12

        c.     The California Plaintiffs Have Alleged Unlawful, Unfair, and
            Fraudulent Practices ............................................................................. 12

    VIII.  THE CALIFORNIA PLAINTIFFS HAVE STATED CCPA AND CCRA
        CLAIMS .................................................................................................... 14

    IX.   THE CALIFORNIA PLAINTIFFS HAVE STATED NON-CALIFORNIA
        CLAIMS .................................................................................................... 14

CONCLUSION ........................................................................................................ 15

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Amara v. CIGNA Corp.*,
     775 F.3d 510 (2d Cir. 2014) ................................................................................6

*Bass v. Facebook, Inc.*,
     394 F.Supp.3d 1024 (N.D. Cal. 2019) ..................................................3

*Brooks v. Thomson Reuters Corp.*,
     No. 21-cv-01418-EMC, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021) .........11,12

*Calhoun v. Google LLC*,
     526 F. Supp. 3d 605 (N.D. Cal. 2021) ..............................................10

*DeWitt Stern Group, Inc. v. Eisenberg*,
     14 F. Supp. 3d 480 (S.D.N.Y. 2014)...................................................11

*Doe v. CVS Pharm., Inc.*,
     982 F.3d 1204 (9th Cir. 2020) ............................................................14

*Gardiner v. Walmart, Inc.*,
     2021 WL 4992539 (N.D. Cal. July 28, 2021) ......................................7

*Greenstein v. Noblr Reciprocal Exch.*,
     2022 U.S. Dist. LEXIS 30228 (N.D. Cal. Feb. 14, 2022).................4, 5

*Heeger v. Facebook, Inc.*,
     509 F.Supp.3d 1182 (N.D. Cal. 2020) .................................................2

*Hoffman v. 162 North Wolfe LLC*,
     175 Cal. Rptr. 3d 820 (Ct. App. 2014)...............................................13

*Huynh v. Quora, Inc.*,
     508 F. Supp. 3d 633, 659 (N.D. Cal. 2020)................................7, 8, 9

*I.C. v. Zynga, Inc.*,
     No. 20-cv-01539-YGR, 2022 U.S. Dist. LEXIS 112601
     (N.D. Cal. Apr. 29, 2022)......................................................................5

*In re Adobe Sys. Privacy Litig.*,
     66 F. Supp. 3d 1197 (N.D. Cal. 2014) ............................................4, 5

*In re Anthem, Inc. Data Breach Litig.*,
     No. 15- MD-02617-LHK, 2016 WL 3029783 (N.D. Cal. May 27, 2016)......12, 13

iii

*In re Anthem, Inc. Data Breach Litig.*,
    162 F. Supp. 3d 953 (N.D. Cal. 2016) ........................................................ 12, 13

*In re Capital One Consumer Data Security Breach Litig.*,
    488 F. Supp. 3d 374 (E.D. Va. 2020).................................................................. 6, 9

*In re Facebook Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) .................................................................... 5, 9, 10

*In re Facebook Privacy Litig.*,
    572 F. App'x 494 (9th Cir. 2014) .............................................................. 4, 9, 10

*In re Google Location Hist. Litig.*,
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ............................................................. 11

*In re iPhone Application Litig.*,
    844 F. Supp. 2d 1040 (N.D. Cal. 2012) ............................................................ 12

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
    313 F. Supp. 3d 1113(N.D. Cal. 2018) ............................................................... 8

*J'Aire Corp. v. Gregory*,
    24 Cal.3d 709 (1979) ............................................................................................ 7

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................................... 13

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ........................................................................ 4, 5

*Kryzhanovskiy v. Amazon.com Servs., Inc.*,
    No. 2:21-CV-01292-DAD/BAM, 2022 WL 2345677
    (E.D. Cal. June 29, 2022) ............................................................................ 11, 12

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Namour & Co.*,
    2015 U.S. Dist. LEXIS 106292 (N.D. Cal. 2015) .............................................. 15

*Lies v. Farrell Lines, Inc.*,
    641 F.2d 765 (9th Cir. 1981) ............................................................................... 9

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ............................................................................. 12

*Lundy v. Facebook Inc.*,
    No. 18-CV-06793-JD, 2021 WL 4503071 (N.D. Cal. Sept. 30, 2021) ...... 9, 11, 12

iv

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

*Martorella v. Deutsche Bank Nat. Trust Co.*,
  931 F.Supp.2d 1218 (S.D. Fla. 2013) ................................................................11

*Matter of McLinn*,
  739 F.2d 1395 (9th Cir. 1984) .........................................................................15

*Mehta v. Robinhood Fin. LLC*,
  No. 21-cv-01013-SVK, 2021 WL 6882377
  (N.D. Cal. May 6, 2021).................................................... 1, 3, 8, 9, 14

*Mehta v. Robinhood Financial, LLC*,
  No. 21-cv-01013-SVK 2021 WL 6882392 (N.D. Cal. Sept. 8, 2021).................13

*Prudential Ins. Co. of America v. Clark Consulting, Inc.*,
  548 F. Supp.2d 619 (N.D. Ill. 2008) ...............................................................11

*R Power Biofuels, LLC v. Chemex LLC*,
  2016 WL 6663002 (N.D. Cal. Nov. 11, 2016) ....................................................7

*Rasmussen v. Apple Inc.*,
  27 F. Supp.3d 1027 (N.D. Cal. 2014) ..............................................................13

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) ......................................................................4, 11

*Spokeo v. Robins*,
  578 U.S. 330 (2016)......................................................................................2

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020).................................................. 5, 8, 9, 14

*TransUnion v. Ramirez*,
  141 S. Ct. 2190 (2021) ...............................................................................2, 3

*Wang v. Chinese Daily News*,
  737 F.3d 538 (9th Cir. 2013) .........................................................................6

**STATUTES**

California Consumer Privacy Act (CCPA)........................................................ 13, 14

California Customer Records Act (CCRA) ........................................................ 13, 14

California Unfair Competition Law (UCL) .................................................. 11, 12, 13

Federal Trade Commission Act (FTCA) ...................................................... 9, 13, 14

Ga. Code Ann. § 10-1-399(a).........................................................................15

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

Kan. Stat. Ann. § 50-634(c) ...........................................................................................15

N.J. Stat. Ann. § 56:8-163(b) ........................................................................................15

S.C. Code Ann. § 39-5-140............................................................................................15

**RULES**

FRCP 23(b)(2)....................................................................................................................6

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

## INTRODUCTION

Defendants (collectively "**Robinhood**") have experienced multiple data breaches in recent years, which exposed their customers' highly sensitive information. In its motion to dismiss, Robinhood relies on documents such as its own self-serving Data Breach Notification to dodge responsibility for its lax data security. However, the complaint alleges exactly how Robinhood's failure to maintain proper security directly leads to actual damages that Plaintiffs have already suffered, including identity theft, the unauthorized use of bank accounts, and lost time resulting from the Data Breach. As such, Robinhood's Motion to Dismiss should be denied.

## BACKGROUND

This case involves Robinhood, a financial services company that allows customers to trade securities. ¶ 2.[1] Specifically, on or about November 3, 2021, hackers gained access to the Personally Identifiable Information ("**PII**") of over 7 million Robinhood customers (the "**Data Breach**"), including full names, email addresses, dates of birth, zip codes and other PII. ¶ 3. This PII is currently up for sale on the dark web for criminals to access and abuse. ¶¶ 53-54. As a result of the Data Breach, Robinhood's customers have been victims of identity theft, fraud, unlawful account access, unauthorized financial transactions, fraudulent government filings, locked out of their accounts, difficulty and/or inability to regain account access, and face a lifetime risk of such activities. ¶ 5.

This Data Breach is not the first time hackers compromised Robinhood's data security. It was previously sued over a separate data breach in early 2021. *See Mehta v. Robinhood Fin. LLC*, No. 21-cv-01013-SVK, 2021 WL 6882377, at *1 (N.D. Cal. May 6, 2021) (denying motion to dismiss). In that case, under similar circumstances, the plaintiffs alleged Robinhood failed to maintain industry standard data security measures, resulting in the exposure of over 2,000 individuals' PII in the fall of 2020.[2]

Shortly after the Data Breach in this action, Plaintiffs began noticing fraudulent charges to their accounts (¶ 96), identity theft, such as a fraudulent car lease (¶ 97) and a fraudulent application for

---

[1] All references beginning with "¶" are to the Consolidated Amended Complaint, ECF No. 34.

[2] The *Mehta* data breach class action recently settled on a classwide basis for "a maximum value of over $19.5 million." *Mehta*, No. 5:21-cv-01013-SVK, ECF No. 61, (N.D. Cal. July 1, 2022).

1

unemployment benefits (¶ 94), among other forms of theft as a result of the Data Breach. Because of these harms, Plaintiffs filed suit beginning on November 10, 2022. The Court consolidated several complaints on April 28, 2022. Plaintiffs timely filed a Consolidated Amended Complaint ("**CAC**") on May 30, 2022. Robinhood filed a Motion to Dismiss ("**Motion**" or "**Mot.**"), and Plaintiffs now respond.

<u>**ARGUMENT**</u>

**I. PLAINTIFFS HAVE STANDING TO BRING THEIR CLAIMS**

To establish standing, a "[p]laintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016). Robinhood only challenges the adequacy of the alleged injury in fact. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id*. at 339 (internal quotations omitted). A "concrete" injury may include tangible or intangible harms, so long as they "actually exist" and are "'real,' and not 'abstract.'" *TransUnion v. Ramirez*, 141 S. Ct. 2190, 2204 (2021) (quoting *Spokeo*, 578 U.S. at 340). In data breach cases, this Court has found that harm to certain types of "informational privacy" may give rise to Article III standing. *Heeger v. Facebook, Inc.*, 509 F.Supp.3d 1182, 1191-92 (N.D. Cal. 2020) (Donato, J.) (allegations that defendant retained PII was violative of privacy interests enshrined in the California constitution and also "privacy injuries").

Here, Plaintiffs allege real, concrete injuries that actually exist and were caused by the Data Breach, and that the Data Breach created a real and specific threat of future identity theft. The CAC aptly alleges that Plaintiffs and the Class have "been victims of identity theft, fraud, unlawful account access, unauthorized financial transactions, fraudulent government filings, locked out of their accounts, difficulty and/or inability to regain account access, and placed at an imminent, immediate, and continuing increased risk of future harm from fraud. Plaintiffs now must take the time and effort to mitigate the actual and potential impact of the Data Breach on their everyday lives." ¶ 90. As Robinhood is well aware, a Judge in this District found last year in *Mehta* that the same alleged damages were sufficient to state a cognizable cause of action in another data breach action. *Compare Mehta*, 2021 WL 6882377, at *6 *with* ¶¶ 7, 90.

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

Plaintiffs also do not allege these damages in the abstract; they provide specific examples of injuries already caused by the Data Breach, including fraudulent debit card transactions (¶ 96), use of stolen identity and bank account information to lease a car (¶ 97), use of a stolen social security number to obtain unemployment benefits (¶ 95), increased incidences of spam emails (¶ 94), and being locked out of financial accounts during the holiday season (¶ 97). These are real injuries, unlike the trivial injuries alleged in the cases relied on by Robinhood, such as *Bass v. Facebook, Inc.*, 394 F. Supp. 3d 1024, 1036 (N.D. Cal. 2019), where the plaintiffs were merely forced to re-enter their passwords. Further *TransUnion's* limiting of damages for the risk of future harm to injunctive relief is inapplicable as Plaintiffs have demonstrated other injuries (such as an emotional injury) from the risk that their PII has been sold to criminals, entitling them to monetary damages. ¶ 7. *See TransUnion*, 141 S. Ct. at n.7, ("[A] plaintiff's knowledge that he or she is exposed to a risk of future physical, monetary, or reputational harm could cause its own current emotional or psychological harm."); *see also Maddox v. Bank of NY Mellon Trust Co., N.A.*, 19 F.4th 58, 65 (2d Cir. 2021) ("'great stress, mental anguish, anxiety, and distress'… are of the sort that *TransUnion* contemplated might form the basis for Article III standing").

Robinhood argues for dismissal because Plaintiffs do not know exactly what PII was exposed. This argument is meritless. Robinhood, and the hackers, are the only ones in a position to know precisely what information was stolen. By describing the specific Data Breach, the CAC provides Robinhood with more than sufficient notice of the claims against it. Furthermore, Robinhood ordinarily collects highly sensitive information, including but not limited to social security numbers, bank account information, financial transaction history, and tax information. ¶¶ 43-45. Afterall, it is a financial services company, so this information is essential to its business operations. This establishes that such information was at least stored on the company's servers and could plausibly have been accessed by hackers.

Robinhood claims that no highly sensitive information, such as social security numbers or bank account information, was stolen. It bases this entirely on its own self-serving announcement, where at most it claims that it "believe[s] that no" such data was stolen. ¶ 49. However, soon after making that announcement Robinhood updated it to reflect "that further information, including customers' phone

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

numbers and other undisclosed types of PII were exposed in the Data Breach," showing that when it made the initial announcement Robinhood may not have been in command of all the facts. ¶ 50.

The CAC also plausibly alleges that Robinhood's initial announcement was less than forthright, including a screenshot of a post made by the alleged hacker who said: "As you should already assume [R]obinhood did lie" about the information that was exposed. ¶ 53. The hacker demanded at least "five figures" for the data and claimed that the information is "highly profitable in the right hands." ¶ 52.

The damages Plaintiffs allege support that highly sensitive information was stolen. These include allegations of fraudulent debit card transactions (¶ 96), use of a stolen identity to lease a car (¶ 97), and use of a stolen social security number to obtain unemployment benefits (¶ 94). Thus, the CAC provides more than sufficient information to believe that at least social security numbers, debit card information, and bank account information were all exposed by the Data Breach. Contrary to Robinhood's failed attempt to downplay the Data Breach, this is not "low sensitivity" information that is generally available. Instead, these are the precise categories of information that Robinhood's cases concede cause harm. *Compare Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140-1143 (9th Cir. 2010) (finding an injury-in-fact as a result of the exposure of names, addresses and social security numbers) *with Greenstein v. Noblr Reciprocal Exch.*, 2022 U.S. Dist. LEXIS 30228, at *12 (N.D. Cal. Feb. 14, 2022) (cited by Robinhood) (distinguishing *Krottner* because that case did not involve similarly sensitive personal information).

Beyond the damages already suffered by Plaintiffs, the fact that highly sensitive personal information was stolen and is up for sale means that Plaintiffs and the class members face a real risk of future identity theft, which represents "a credible threat of harm" that is "both real and immediate, not conjectural or hypothetical." *Krottner*, 628 F.3d at 1143. There is no need to speculate on "whether the hackers intend to misuse the personal information stolen in the … data breach or whether they will be able to do so." *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1215 (N.D. Cal. 2014). The CAC quotes the hacker as saying that this "information is 'highly profitable in the right hands'" and that he intends to sell it on the black market for tens of thousands of dollars. ¶¶ 52-53. The damages Plaintiffs already suffered show that the data stolen presents a real and immediate threat of future identity theft because such theft has already occurred for Plaintiffs. *See In re Adobe Sys.*, 66 F. Supp. 3d at 1215.

Robinhood cites a few cases that supposedly reject damages such as those alleged here, but each case is clearly distinguishable because the data there did not present a sufficient threat of future identity theft. For example, in *Greenstein.*, both an application for unemployment insurance and the purchase of credit monitoring were not sufficient to show damages. 2022 US Dist. LEXIS 30228 at *14. There, no sensitive information such as social security numbers or bank account information was stolen, which was a point the court repeatedly highlighted. *Id.* at *13-14. Robinhood likewise relies on *I.C. v. Zynga, Inc.*, No. 20-cv-01539-YGR, 2022 U.S. Dist. LEXIS 112601 (N.D. Cal. Apr. 29, 2022), where the court found allegations of identity theft not plausible because nothing in the "information stolen … could be used to set up an account with a financial institution[.]" *Id.* at *26.

Robinhood further attempts to evade liability for its Data Breach by arguing that the loss of privacy and the time, stress and annoyance of dealing with the company's wrongful conduct are insufficient to confer standing. Robinhood is incorrect. As the Ninth Circuit said in *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589 (9th Cir. 2020), "Plaintiffs have adequately alleged an invasion of a legally protected interest that is concrete and particularized. ['V]iolations of the right to privacy have long been actionable at common law.'" *Id.* at 598 (*quoting Patel v. Facebook*, 932 F.3d 1264, 1272 (9th Cir. 2019) (internal quotations omitted)). The stress, time, and annoyance of dealing with the loss of highly sensitive information like that exposed here has long been recognized as a cognizable injury. *Krottner*, 628 F.3d at 1142-43. Furthermore, even when less sensitive information is stolen, the lost time and effort spent dealing with the data breach can constitute damages. *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 917-18 (S.D. Cal. 2020) (holding that the loss of sensitive information constitutes damages, but that even without such sensitive information, lost time alone was sufficient to establish damages). Likewise, the time and effort one needs to expend by dealing with increased spam resulting from a data breach is also recoverable as damages. *Id.* at 917-18 ("It is also reasonable to infer that the receipt of alleged spam/phishing e-mails and/or calls cost Plaintiffs some of their time"). Thus, Plaintiffs' lost time alone is sufficient to confer Article III standing. Yet, Plaintiffs' allegations go well beyond this threshold, and standing is therefore conferred here.

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

## II. PLAINTIFFS ARE ALSO ENTITLED TO EQUITABLE RELIEF

Robinhood asserts that Plaintiffs fail to adequately plead entitlement to equitable or other injunctive relief. Robinhood is wrong. In the CAC, Plaintiffs state that "the Class Members also are entitled to injunctive relief requiring Robinhood to, *inter alia*, strengthen its data security systems and monitoring procedures, conduct periodic audits of those systems, and provide credit monitoring and identity theft insurance to Plaintiffs and the Class Members." ¶ 163 *accord* ¶¶ 175, 191, 205, and 216. These are not mere "conclusory allegations" as Robinhood asserts. Instead, the relief sought is specific to remedy Robinhood's wrongful conduct and to ensure the Class Members are adequately protected in the future. Similarly, Plaintiffs allege irreparable harm by the use of their PII. *Id.* ¶¶ 86, 90-103.

A class may be certified under Rule 23(b)(2) when a single injunction or declaratory judgment would provide relief to each member of the class. *Wang v. Chinese Daily News*, 737 F.3d 538, 544 (9th Cir. 2013). The key issue is whether the same equitable relief will apply to all members of a proposed class. *Amara v. CIGNA Corp.*, 775 F.3d 510, 522 (2d Cir. 2014). Here, absent an injunction, Robinhood is likely to continue to violate state and federal law regarding consumer data protections. ¶¶ 86, 90-103. As such, Plaintiffs seek a single injunction preventing Robinhood from continuing to violate the law by strengthening its security. At this stage, that is sufficient to permit discovery on the issue.

## III. PLAINTIFFS HAVE STATED A VALID NEGLIGENCE CLAIM

### a. The Economic Loss Doctrine Does Not Apply.

Robinhood contends that the economic loss rule bars Plaintiffs' negligence claims. Mot. at 7-8. Robinhood is wrong. Most obviously, Robinhood's argument fails because it argues for the invocation of the economic loss rule only based on California law; however, Plaintiffs are from various states beyond California, including some where the economic loss rule does not apply, such as Florida and Virginia. ¶¶ 22, 36. *See In re Capital One Consumer Data Security Breach Litig.*, 488 F. Supp. 3d 374, 395-401 (E.D. Va. 2020) (surveying whether the economic loss rule applies to data breach claims under various state laws). In fact, a plurality of plaintiffs in this case reside in New York (¶¶ 18, 25-31), which has refused to apply the economic loss rule to data breach cases. *Id.* at 396 ("federal district courts in New York … have declined to apply the economic loss doctrine to data breach claims.").

6

Even in those states where the economic loss rule is enforced, it would not apply here because a "special relationship" exists between Plaintiffs and Robinhood – which is an exception that removes Plaintiffs' claims from the scope of the economic loss rule. To judge the existence of a special relationship giving rise to an independent duty, courts consider six factors: (1) the extent to which the transaction was intended to affect the plaintiffs; (2) the foreseeability of harm to the plaintiffs; (3) the degree of certainty that the plaintiffs suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *J'Aire Corp. v. Gregory*, 24 Cal.3d 709, 804 (1979). Importantly, the *J'Aire* special relationship exception applies if the contracts are for services, but not goods.[3] *See, e.g.*, *R Power Biofuels, LLC v. Chemex LLC*, 2016 WL 6663002, at \*5 (N.D. Cal. Nov. 11, 2016). Here, Plaintiffs entered into contracts with Robinhood to procure financial services, not goods. Additionally, Plaintiffs' allegations make plausible each of the *J'aire* factors. ¶¶ 43-44, 94-99. So, the *J'aire* exception applies.

Moreover, there is "moral blame" ascribable to Robinhood's conduct: Robinhood's prior data breach was in the fall of 2020, barely a year before the incident that prompted this litigation. Recognizing this claim furthers the policy of preventing future harms, as well as advances the California state policy regarding data protection expressed in the California Unfair Competition Law, discussed *infra*. Therefore, the "special relationship" exception applies; and the economic loss rule does not preclude Plaintiffs' negligence claims. *See, e.g.*, *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 659 (N.D. Cal. 2020) (denying argument that the economic loss rule bars negligence claim for data breach); *see also In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d 1113, 1133 (N.D. Cal. 2018) (denying motion to dismiss based on the economic loss rule in data breach case).

---

[3] Robinhood's argument that the "special relationship" exception does not apply because Plaintiffs are in privity with Robinhood is of no moment. *Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at \*6 (N.D. Cal. July 28, 2021), which Robinhood cite in support of this argument is inapposite. In that case, plaintiffs alleged that they entered into a contract with Walmart for *goods*, not services, precluding the *Jaire* exception. Not so here. Robinhood acknowledges that is "a financial *services* company that allows its … customers to trade stocks, exchange-traded funds, and cryptocurrencies through its websites and mobile application." (emphasis added). Mot. at 1.

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

**b. Plaintiffs Adequately Pled Their Negligence Claims.**

Next, Robinhood tries to argue that Plaintiffs fail to plausibly allege a duty of care, damages, or causation for their negligence claims. Mot. at 8-9. To prevail on a negligence claim, a plaintiff must allege facts showing: "(1) the existence of a duty to exercise due care; (2) breach of that duty; (3) causation; and (4) damages." *Huynh v. Quora, Inc.*, 508 F. Supp. 3d 633, 648 (N.D. Cal. 2020). Plaintiffs have done so here. ¶¶ 118-136. In Robinhood's fall 2020 breach, approximately 2,000 users' accounts were hacked or compromised, just thirteen months prior to the instant Data Breach, with many of those accounts having enabled two-factor authentication. *Mehta*, 2021 WL 6882377, at *1. The fact that accounts with two-factor authentication enabled were compromised just months before this Data Breach is indicative of Robinhood's abject failure to implement and maintain proper data security measures. At bottom, Robinhood's duty was apparent after the first data breach, after which it knew that its security measures were inadequate. *See*, *e.g.*, ¶¶ 124, 125.

Beyond this being Robinhood's second recent data breach, it boldly contends that the PII it failed to protect was not sensitive enough to trigger a duty of care. Robinhood oddly cites *Mehta,* but *Mehta* supports Plaintiffs, not Robinhood. As noted above, the CAC plausibly alleges that highly sensitive information like social security numbers were stolen. *Supra* at p. 1. In *Mehta*, the court held that this same PII was sensitive enough to trigger a duty of care. 2021 WL 6882377, at *6.

Next, Robinhood argues that Plaintiffs fail to plead "actual damage" due to the Data Breach. Mot. at 9. As to damages, as noted, Plaintiffs here plead substantially similar damages as to those accepted in *Mehta*. Moreover, as also noted, lost time and costs resulting from a data breach can support a negligence claim. *See*, *e.g.*, *Mehta,* 2021 WL 6882377, at *5 (recognizing that courts have found that allegations of lost time and money constitute cognizable harm); *Stasi,* 501 F. Supp. 3d at 916 (finding plausible the lost time and increase in spam/phishing plaintiffs allegedly suffered was caused by the alleged data breach).

Robinhood also contends that Plaintiffs fail to allege facts as to whether it had unreasonable security practices or how its conduct caused the breach or any of the alleged damages. Mot. at 9. First, causation is generally a question of fact. *Lies v. Farrell Lines, Inc.*, 641 F.2d 765, 770 (9th Cir. 1981).

8

Second, similar arguments were raised by Robinhood and rejected in *Mehta*, and they should also be rejected here. *Mehta*, 2021 WL 6882392 at *5. Third, courts have held that, where a data breach is a substantial factor, causation is properly pled when plaintiffs (like here) lost time as a result of a defendant's failure to protect their PII. *Stasi*, at *9; *Huynh* at 651–52.

### c. Plaintiffs Adequately Pled a Negligence *Per Se* Claim.

Numerous courts have held that negligence *per se* claims are adequately pled in data breach cases based on allegations that the defendant, like Robinhood here, violated rules and standards set by the Federal Trade Commission. *See, e.g., In re Capital One Breach Litig.*, 488 F. Supp. 3d at 408. The CAC alleges in great detail the requirements and guidelines of the FTC in the realm of data security and Robinhood's failure to comply with such requirements and guidelines. *See* CAC ¶¶ 69-70. Therefore, the CAC adequately pleads a negligence *per se* claim.

## IV. PLAINTIFFS HAVE STATED A BREACH OF CONTRACT CLAIM

In order to establish a breach of contract, plaintiffs must allege: (1) the existence of a contract with Robinhood, (2) their performance under that contract, (3) Robinhood's breach of the contract, and (4) that they suffered damages. *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 610. Harm due to the dissemination of PII is "sufficient to show the element of damages for [plaintiffs] breach of contract . . . claims." *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014). Under California law, even an inability to show actual damages does not preclude recovery for breach of contract. *Lundy v. Facebook Inc.*, No. 18-CV-06793-JD, 2021 WL 4503071, at *2 (N.D. Cal. Sept. 30, 2021) (Donato, J.) (recognizing nominal damages and disgorgement are adequate measures of contractual damages in a data breach case).

Here, Plaintiffs allege they provided their PII to Robinhood to create their accounts on its website as a *requirement* to become a Robinhood customer (¶ 43) and they entered into contracts by which Robinhood agreed to protect their PII in accordance with its Privacy Policy (¶ 151). Plaintiffs in fact provided Robinhood with their PII when they opened their accounts with the company. ¶¶ 156, 159. And Robinhood contractually promised to reasonably protect Plaintiffs' and the Class Members' PII through, among other things, its Privacy Policy. ¶ 157. Specifically, Plaintiffs allege that Robinhood promised not

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

to disclose customers' information except under specific circumstances (i.e., to authorized vendors; during transactions; for legal purposes; or with customers' consent), none of which were present here. ¶¶ 46, 63, 154. Despite its contractual promises, and a prior data breach just months earlier, Robinhood breached its contracts by failing to safeguard customers' PII during the Data Breach, exposing Plaintiffs and Class Members to financial losses, fraud, identity theft, lost time, and further risk of cyber-attack in the future. ¶¶ 64, 160. Indeed, Plaintiffs experienced harm due to the dissemination of their PII and therefore have suffered damages. ¶¶ 65, 88-103; *see also*, *In re Facebook Privacy Litig.*, 572 F. App'x at 494. Nothing more is required to state a breach of contract claim.

Despite Plaintiffs' well-pled breach allegations, Robinhood argues that Plaintiffs have not alleged any specific provisions that Robinhood breached. Def. Mot. at 10. But Judge Koh recently rejected a similar argument made by a defendant in a data breach case, *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. 2021). Judge Koh held, "[T]hese promises could have led a reasonable user to conclude that, because they did not sync, Google would not receive their personal information." *Id.* Similarly here, Plaintiffs allege that Robinhood made contractual promises to reasonably protect Plaintiffs' and the Class Members' PII through its Privacy Policy. ¶ 156. Plaintiffs reasonably believed and expected that Robinhood's data security practices would protect their PII and that Robinhood would not disseminate their PII unless they consented to such dissemination. ¶ 63.

**V. PLAINTIFFS STATED A BREACH OF IMPLIED CONTRACT CLAIM**

Robinhood also challenges Plaintiffs' claim for breach of implied contract. Mot. at 10-11. At the threshold, Plaintiffs incorporate their arguments supporting a finding of a valid breach of contract here because Plaintiffs have presented the same conduct, causation, and injury as those plaintiffs in *In re Facebook Internet Tracking Litig.,* and *In re Facebook Privacy Litig. See supra* at pp. 5 and 9. Moreover, should the Court find that no valid contract exists, the Court should sustain Plaintiffs' breach of implied contract claim, or grant leave to amend to cure any deficiency in their claim.

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

## VI. PLAINTIFFS HAVE STATED A VALID UNJUST ENRICHMENT CLAIM

The status of unjust enrichment as an independent cause of action under California law is not settled. However, Plaintiffs allege unjust enrichment in the alternative, something this Court has held is permitted under the federal rules.[4] *Lundy*, 2021 WL 4503071 at *2.

Robinhood also argues that Plaintiffs fail to and cannot allege that Robinhood received any benefit from the Data Breach. Mot. at 11. However, the CAC alleges that Plaintiffs and the Class Members conferred a monetary benefit on Robinhood by purchasing financial services through Robinhood and paying fees to Robinhood and that it profited from this, yet if failed to adequately secure customers' PII. ¶¶ 178-181. These allegations are sufficient to allege an unjust enrichment claim. *See*, *e.g*., *In re Google Location Hist. Litig.*, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021).[5]

## VII. THE CALIFORNIA PLAINTIFFS HAVE STATED A VALID UCL CLAIM

### a. *Sonner* Does Not Bar Plaintiffs' UCL Claim.

Despite Robinhood's protestations (Mot. at 11), the California Plaintiffs' Unfair Competition Law ("**UCL**") claim is not barred by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020). The *Sonner* court specifically noted that "[i]njunctive relief [wa]s not at issue" in that case, *id.* at 842; indeed, subsequent cases have noted that while the "decision in *Sonner* bars equitable restitution for past harms that are otherwise subject to an adequate legal remedy, *it does not bar the issuance of an injunction to prevent future harms.*" *Kryzhanovskiy v. Amazon.com Servs., Inc.*, No. 2:21-CV-01292-DADBAM, 2022 WL 2345677, at *4 (E.D. Cal. June 29, 2022) (emphasis added); *see also Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 WL 3621837, at *10 (N.D. Cal. Aug. 16, 2021) (same). Furthermore, increasingly "courts have declined to apply *Sonner* to bar UCL claims for injunctive relief,

---

[4] Other states concur with this Court in finding that unjust enrichment may be pled in the alternative. *See, e.g., Prudential Ins. Co. of America v. Clark Consulting, Inc.*, 548 F. Supp.2d 619 (N.D. Ill. 2008); *DeWitt Stern Group, Inc. v. Eisenberg*, 14 F. Supp. 3d 480, 485 (S.D.N.Y. 2014); *Martorella v. Deutsche Bank Nat. Trust Co.*, 931 F.Supp.2d 1218, 1227 (S.D. Fla. 2013).

[5] Robinhood also argues that Plaintiffs' unjust enrichment claim is barred by *Sonner*. Mot. at 11. First, the unjust enrichment claim is pleaded in the alternative to the breach of contract claim, one of Plaintiffs' potential remedies at law. Second, none of Plaintiffs' other causes of action will restore the value of Robinhood's unjust enrichment derived from the collection of Plaintiff's PII for their own purposes. Thus, there lacks a complete remedy and *Sonner* is inapplicable.

---

recognizing that the prospect of paying damages is sometimes insufficient to deter a defendant from engaging in an alleged unlawful, unfair, or fraudulent business practice." *Kryzhanovskiy*, 2022 WL 2345677 at *4 (quoting *Brooks* and citing additional cases).

### b. The California Plaintiffs Have Pled Economic Injury and Reliance

To state a claim for injunctive relief under the UCL, a plaintiff need only allege a loss of money or property. *See In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1071-72 (N.D. Cal. 2012) (discussing the "innumerable ways in which the economic injury from unfair competition may be shown") (citation omitted). Plaintiffs allege they have suffered injury in fact, harms, and losses including economic loss, loss of control over the use of their identity, lost time, and future economic loss (¶ 103). These allegations are sufficient to establish standing under the UCL.

As to reliance, Plaintiffs here clearly meet the pleading requirements by alleging that they would not have provided their PII to Robinhood or retained its services had they known that its representations *and omissions* regarding data security were false (¶¶ 158, 171, 181, 199, 200 260). *See Lundy*, 2021 WL 4503071 at *1 ("[Plaintiffs] also allege that they would not have used the Facebook App… had they known that Facebook would collect their location information… These allegations plausibly allege reliance.") (internal quotations omitted); *In re Anthem, Inc. Data Breach Litig.*, No. 15-MD-02617-LHK, 2016 WL 3029783, at *36 (N.D. Cal. May 27, 2016) (actual reliance sufficiently pled for purposes of stating a UCL claim under the unlawful, fraudulent and unfair prongs).

### c. The California Plaintiffs Have Alleged Unlawful, Unfair, and Fraudulent Practices

"California's [UCL] provides a cause of action for business practices that are unlawful, unfair, or fraudulent." *In re Anthem, Inc. Data Breach Litig.*, 162 F. Supp. 3d 953, 984 (N.D. Cal. 2016) (citing Cal. Bus. & Prof. Code § 17200, *et seq.*). Each prong provides a separate and distinct theory of liability. *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007).

Violation of almost any law may serve as a basis for a UCL claim, as long as the complaint identifies the statute that was violated and describes with reasonable particularity the facts supporting the violation. *See Anthem*, 162 F. Supp. 3d at 989. Plaintiffs have described with reasonable particularity both the applicable statutes and Robinhood's conduct that violated the statutes, *inter alia*, the FTC Act

(¶¶ 67-79, 198(d)), CCPA (¶¶ 214-216), and CCRA (¶¶ 208-211). And as discussed herein, Plaintiffs have plausibly alleged substantial injury related to Robinhood's inadequate security practices. *Supra* at pp. 2 and 3. In light of this, Plaintiffs sufficiently pled unlawful conduct under the UCL.

Contrary to Robinhood's contentions, the CAC does satisfy the heightened pleading requirements for a claim for fraud under Rule 9(b) as enunciated in *Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009). Further, "a fraud by omission or fraud by concealment claim can succeed without the same level of specificity required by a normal fraud claim." *In re Anthem, Inc. Data Breach Litig.* 2016 WL 3029783 at *35 (citations omitted).

Actual reliance is plausibly pled. ¶ 56.[6] Robinhood's knowledge that its security measures were inadequate was plausibly pled at *e.g.*, ¶¶ 120, 125-126. Causation was plausibly pled *ad nauseum. See, e.g.*, ¶¶ 5, 59, 61, 64, 66, 76, 88-90, and 93-103 of the CAC. As described above, Plaintiffs allege that Robinhood made both misrepresentations and omissions regarding its security measures – stating that they would not have provided their PII to Robinhood or retained its services had they known that representations and omissions regarding cyber security were false. ¶¶ 199-201. These allegations are sufficient to state a UCL claim under the fraudulent prong. *In re Anthem*, at *36 (finding plaintiffs stated a UCL claim by alleging that they "would not have enrolled in Defendants' insurance and health benefit services if they had known about Defendants' substandard data security practices."); *Hoffman v. 162 North Wolfe LLC*, 175 Cal. Rptr. 3d 820, 833–34 (Ct. App. 2014).

Since, as demonstrated above, the unlawful and fraudulent prongs of the UCL claim must survive, the unfair prong cannot be dismissed because of the demise of the other two prongs, as Robinhood urges. Robinhood's contention that Plaintiffs "fail adequately to plead 'unfair' conduct under any test" is spurious. In *Doe v. CVS Pharm., Inc.*, 982 F.3d 1204 (9th Cir. 2020), the Court stated that unfairness could be demonstrated in a number of ways. One was to show "tethering" to an underlying statutory or

---

[6] Plaintiffs' allegations of reliance are at least on par with, if not surpassing, those in *Rasmussen v. Apple Inc.*, 27 F. Supp.3d 1027 (N.D. Cal. 2014) ("While Plaintiff has not expressly alleged the precise statements or advertisements upon which he has relied, he has alleged sufficient information about the information on which he relied, as well as examples of similar specific statements from the same sources, to give [Defendant] notice of the nature of the alleged misrepresentations at issue.") (cited in *Mehta v. Robinhood Financial, LLC*, No. 21-cv-01013-SVK 2021 WL 6882392 at *4 (N.D. Cal. Sept. 8, 2021)).

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

regulatory provision. Here, as discussed above, Plaintiffs adequately allege violations of the FTCA. It has also been demonstrated that the second method, demonstration that "the practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers'" has been adequately pled. ¶¶ 330, 349. As to the third method, "whether the practice's impact on the victim outweighs 'the reasons, justifications and motives of the alleged wrongdoer [,] '" no claim has been made by Robinhood, nor can it make one, that intentionally deceiving customers can ever be justified or grounded in innocent motivation. As discussed elsewhere herein, injury in fact has been plausibly pled.

**VIII.   THE CALIFORNIA PLAINTIFFS HAVE STATED CCPA AND CCRA CLAIMS**

California courts have found defendants liable for a violation of the CCPA for data breaches, like Robinhood's Data Breach here. See e.g., *Mehta*, 2021 WL 6882377, at *8 (upholding CCPA claim and finding allegations that plaintiffs' "sensitive personal and financial information, including but not limited to their names, social security numbers, dates of birth, mailing addresses, telephone numbers . . ." constituted a disclosure under the CCPA); *Stasi*, 2020 WL 6799437, at *16 (upholding CCPA claim and finding allegations that plaintiffs' personal and medical information, *but not social security numbers*, were accessible via the internet constituted a "disclosure" under the CCPA) (emphasis added).

Here, Plaintiffs allege that Robinhood has a wealth of PII. ¶ 43. Plaintiffs also allege that Robinhood violated its duty to implement and maintain reasonable security procedures by failing to implement sophisticated security measures employed by other brokerage firms and allowing their two-factor authentication-enabled accounts to be compromised. ¶ 58-59. At the pleadings stage, Plaintiffs sufficiently allege a plausible claim that their personal and financial information was subject to an unauthorized access based on violation of the CCPA.[7]

**IX.   PLAINTIFFS HAVE STATED NON-CALIFORNIA STATUTORY CLAIMS**

Robinhood's objections to the non-California state claims are that "these statutes protect only limited categories of personal information that Plaintiffs do not allege were exposed." Mot. at 14. However, the CAC clearly alleges that multiple types of PII were exposed due to the Data Breach, by

---

[7] Robinhood also challenges Plaintiffs' CCRA claim, but this court has previously found a violation of the CCRA by the *same Defendant* for substantially similar conduct in a data breach. *See Mehta*, 2021 WL 6882392, at *5.

14

Robinhood's admission. *See, e.g.*, ¶ 49. Later, Robinhood admitted "that further information, including customers' phone numbers and other undisclosed types of PII were exposed in the Data Breach." ¶ 50. As shown above, the allegations also suggest even more highly sensitive information was exposed. *Supra* at pp. 3-4.

Robinhood has not revealed the exact nature of the PII compromised for each individual Plaintiff. If the precise nature of the compromised PII is known at all, it is best and exclusively known to Robinhood and discovery is needed as to these issues.

Further, Robinhood claims that "[t]here is also a split as to whether New Jersey's data security statute (Count XXIII) provides for a private right of action." Assuming the statute to which reference is made is N.J. Stat. Ann. § 56:8-163(b), if in fact there is a split on this issue (and neither of Robinhood's cited cases support this contention) when a state's highest court has not addressed an issue of state law, "[g]enerally, 'federal court interpretations of undecided state law issues do have precedential value, and therefore deserve the attention we generally grant to the creation of precedent.'" *Matter of McLinn*, 739 F.2d 1395, 1401 (9th Cir. 1984).[89]

Robinhood's cavil that Claims X, XII, XIV, XVII, XX, XXII, and XXIV (and potentially XVIII) fail to meet the heightened pleading standard for fraud under Rule 9(b) is ill-founded. *Supra* at § VII(2). As to Robinhood's contentions concerning Claims XIII, XIV, XVI, XVII, XX (and XXIV to the extent it is based on alleged concealment), Robinhood's intent to deceive and impact upon the public interest or consumers at large was plausibly pled within the language of each of Plaintiffs' causes of actions.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that this Court deny Robinhood's motion to dismiss in its entirety.

---

[8] Robinhood also produces a laundry list of "fatal flaws" regarding Plaintiffs' consumer protection claims, but each of these are easily refuted within the CAC, as Plaintiffs did allege actual damages or injury, a lack of an adequate remedy at law, and service of pre-suit notice.

[9] Robinhood also argues that certain state consumer protection statutes are barred from prosecution as a class action. Courts in this District have disagreed with that contention as to S.C. Code Ann. § 39-5-140. *See, e.g., Los Gatos Mercantile, Inc. v. E.I. Dupont de Namour & Co.*, 2015 U.S. Dist. LEXIS 106292 (N.D. Cal. 2015) (collecting cases). The reasoning found in *Los Gatos* can also be imported to Ga. Code Ann. § 10-1-399(a) and Kan Stat. Ann. § 50-634(c).

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS

Dated:   July 29, 2022                    Respectfully Submitted By:

                                          */s/ Mason A. Barney*
                                          Mason Barney*
                                          mbarney@sirillp.com
                                          SIRI & GLIMSTAD LLP

                                          Sonal Jain*
                                          sjain@sirillp.com
                                          Elizabeth A. Brehm
                                          ebrehm@sirillp.com
                                          Sean Nation
                                          snation@sirillp.com
                                          200 Park Avenue
                                          Seventeenth Floor
                                          New York, NY 10166
                                          Telephone: 212-532-1091
                                          Facsimile: 646-417-5967

                                          Kevin Laukaitis*
                                          SHUB LAW FIRM LLC
                                          134 Kings Hwy E 2nd Floor
                                          Haddonfield, NJ 08033
                                          Tel: (856) 772-7200
                                          Email: klaukaitis@shublawyers.com

                                          HELD & HINES, LLP
                                          Philip M. Hines*
                                          2004 Ralph Avenue
                                          Brooklyn, New York 11234
                                          Tel: (718) 531-9700
                                          Email: phines@heldhines.com

                                          *Admitted Pro Hac Vice or Application
                                          Forthcoming*

                                          *Counsel for Plaintiffs and the Proposed Class*

16

PLAINTIFFS' OPPOSITION TO ROBINHOOD'S MOTION TO DISMISS