Alan Schoenfeld (*pro hac vice*)
alan.schoenfeld@wilmerhale.com
Michael Bongiorno (*pro hac vice*)
michael.bongiorno@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
(212) 230-8800

Allison Bingxue Que (SBN 324044)
allison.que@wilmerhale.com
WILMER CUTLER PICKERING
   HALE AND DORR LLP
2600 El Camino Real, Suite 400
Palo Alto, California 94306
(650) 858-6000

*Attorneys for Defendants Robinhood Markets, Inc.; Robinhood Crypto, LLC; Robinhood Financial LLC; Robinhood Securities, LLC*

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE ROBINHOOD DATA SECURITY LITIGATION | Master File No: 3:21-cv-08906-JD (consolidated with 3:21-cv-09290-JD and 3:22-CV-00224-JD) <br><br> **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS CONSOLIDATED CLASS ACTION COMPLAINT** <br><br> Judge:  Hon. James Donato <br> Date:  October 13, 2022, 10:00 am <br> Location:  Courtroom 11 – 19th floor |

**TABLE OF CONTENTS**

ARGUMENT ..................................................................................................................................1

I.     PLAINTIFFS LACK ARTICLE III STANDING ...............................................................1

II.    EACH CLAIM SEPARATELY FAILS UNDER RULE 12(b)(6) .....................................3

        A.     Plaintiffs Fail To State A Negligence Claim (Counts I & II) .................................3

        B.     Plaintiffs Fail To State A Breach Of Contract Claim (Count III) ...........................5

        C.     Plaintiffs Fail To State An Implied Contract Claim (Count IV) .............................6

        D.     Plaintiffs Fail To State An Unjust Enrichment Claim (Count V) ...........................6

        E.     The California Plaintiffs Fail To State A UCL Claim (Count VII) ........................6

        F.     The California Plaintiffs Fail To State A CCRA Or CCPA Claim (Counts VIII & IX) ........................................................................................................................8

        G.     Plaintiffs' Non-California Statutory Claims All Fail (Counts X-XXIV) ................9

III.   PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF ................................10

CONCLUSION .............................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Ace Am. Ins. Co. v. Accellion, Inc.*,
　2022 WL 2341155 (N.D. Cal. Apr. 11, 2022) ...................................................................3

*Anderson v. Apple Inc.*,
　500 F. Supp. 3d 993 (N.D. Cal. 2020) ..........................................................................10

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ........................................................................................................1

*Bohnak v. Marsh & McLennan Cos., Inc.*,
　2022 WL 158537 (S.D.N.Y. Jan. 17, 2022) ..................................................................10

*Calhoun v. Google LLC*,
　526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021) .............................................................5

*Capelak v. HP Inc.*,
　2021 WL 5298022 (N.D. Cal. Nov. 15, 2021) ..............................................................10

*Fejzulai v. Sam's W., Inc.*,
　205 F. Supp. 3d 723 (D.S.C. 2016) .................................................................................9

*Flores-Mendez v. Zoosk, Inc.*,
　2021 WL 4553772 (N.D. Cal. Oct. 5, 2021) ...................................................................7

*Frezza v. Google Inc.*,
　2012 WL 5877587 (N.D. Cal. Nov. 20, 2012) ................................................................6

*Gardiner v. Walmart, Inc.*,
　2021 WL 4992539 (N.D. Cal. July 28, 2021) .................................................................6

*Gardner v. Health Net, Inc.*,
　2010 WL 11597979 (C.D. Cal. Aug. 12, 2010) ..............................................................8

*Great Pac. Secs. v. Barclays Cap., Inc.*,
　743 F. App'x 780 (9th Cir. 2018) ....................................................................................7

*Greenstein v. Noblr Reciprocol Exch.*,
    2022 WL 472183 (N.D. Cal. Feb. 15, 2022) ................................................................2, 3, 4, 10

*Heeger v. Facebook, Inc.*,
    509 F. Supp. 3d 1182 (N.D. Cal. 2020) ................................................................................1

*I.C. v. Zynga, Inc.*,
    2022 WL 2252636 (N.D. Cal. Apr. 29, 2022) ..............................................................2, 3, 10

*In re Adobe Sys., Inc. Priv. Litig.*,
    66 F. Supp. 3d 1197 (N.D. Cal. 2014) ..................................................................................1

*In re Facebook Inc. Internet Tracking Litig.*,
    956 F.3d 589 (9th Cir. 2020) ............................................................................................1, 6

*In re Facebook Privacy*,
    572 F. App'x 494 (9th Cir. 2014) ......................................................................................5, 6

*In re Google Location History Litig.*,
    514 F. Supp. 3d 1147 (N.D. Cal. 2021) ................................................................................6

*Jones v. Micron Tech. Inc.*,
    400 F. Supp. 3d 897 (N.D. Cal. 2019) ...........................................................................9, 10

*Krottner v. Starbucks Corp.*,
    628 F.3d 1139 (9th Cir. 2010) ...........................................................................................1, 2

*Lobstein v. Wa. Mut. Mortg. Pass-Through Certificates WMALT Series 2007-OC1*,
    2020 WL 3964788 (C.D. Cal. June 8, 2020) .......................................................................4

*Los Gatos Mercantile, Inc. v. E.I. Dupont de Namour & Co.*,
    2015 WL 4755335 (N.D. Cal. Aug. 11, 2015) .....................................................................9

*Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*,
    19 F. 4th 58 (2d Cir. 2021) ...................................................................................................2

*Mehta v. Robinhood Fin. LLC*,
    2021 WL 6882377 (N.D. Cal. May 6, 2021) ....................................................................1, 4

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
    2022 WL 1990225 (N.D. Cal. June 6, 2022) ........................................................................5

*Oliver v. SD-3C LLC*,
  2015 WL 10890656 (N.D. Cal. Sept. 30, 2015) ................................................................. 2

*Phillips v. Apple Inc.*,
  2016 WL 1579693 (N.D. Cal. Apr. 19, 2016) ................................................................... 7

*Pruchnicki v. Envision Healthcare Corp.*,
  845 F. App'x 613 (9th Cir. 2021) ..................................................................................... 4

*Schmitt v. SN Servicing Corp.*,
  2021 WL 3493754 (N.D. Cal. Aug. 9, 2021) .................................................................. 3

*Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*,
  559 U.S. 393 (2010) ......................................................................................................... 9

*Stasi v. Inmediata Health Grp. Corp.*,
  501 F. Supp. 3d 898 (S.D. Cal. 2020) .................................................................... 1, 4, 8

*Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*,
  696 F. App'x 200 (9th Cir. 2017) ..................................................................................... 7

*Tabler v. Panera LLC*,
  2020 WL 3544988 (N.D. Cal. June 30, 2020) ................................................................ 7

*Thomas v. Kimpton Hotel & Rest. Grp., LLC*,
  2020 WL 3544984 (N.D. Cal. June 30, 2020) .............................................................. 10

*Torres v. Wendy's Int'l, LLC*,
  2017 WL 8780453 (M.D. Fla. Mar. 21, 2017) ................................................................ 9

*Turner v. Apple, Inc.*,
  2022 WL 445755 (N.D. Cal. Feb. 14, 2022) ................................................................... 7

*Whitesides v. E*Trade Secs., LLC*,
  2021 WL 930794 (N.D. Cal. Mar. 11, 2021) ................................................................... 4

*Yue v. Chordiant Software, Inc.*,
  2008 WL 11141245 (N.D. Cal. June 24, 2008) .............................................................. 6

**State Cases**

*J'Aire Corp. v. Gregory*,
    24 Cal. 3d 799 (1979) ................................................................................................................3

*Sheen v. Wells Fargo Bank, N.A.*,
    12 Cal. 5th 905 (2022) ...............................................................................................................9

# ARGUMENT

## I. PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs concede that not every exposure of PII gives rise to Article III standing. Opp. 2; *see also* Mot. 2-3. Rather, they must allege that PII of the requisite sensitivity to establish standing—*e.g.*, social security numbers or bank account numbers—was exposed in the data security incident on November 3, 2021 (the "Security Incident"). Plaintiffs do not and cannot. Instead, they claim that they do not know and do not need to allege what kind of information was exposed in the Security Incident. Opp. 3, 15.[1] But the Complaint itself belies any such claim: Plaintiffs allege the exposure of "stolen email addresses linked to financial accounts," not actual financial account information, and speculate that future injury might result "*[i]f* more sensitive information like social security numbers is stolen." CAC ¶ 92. The Complaint also alleges that Plaintiffs "received an email from Robinhood informing [them] that their PII had been stolen," *id.* ¶¶ 12-36, and they acknowledge Robinhood's announcement that "[b]ased on our investigation … we believe that no [SSN]s, bank account numbers, or debit card numbers were exposed," *id.* ¶ 49. Plaintiffs' allegations give rise to no plausible inference that their sensitive PII was disclosed. Plaintiffs attempt to fault Robinhood (Opp. 3) for relying on its own contemporaneous report about the results of its investigation to overcome their pleading's shortcomings, but the Complaint cites and incorporates those statements. CAC ¶ 49. Plaintiffs also rely on an anonymous criminal hacker's vague statement that Robinhood "did lie" about the Security Incident. Opp. 4. None of this suffices to "nudg[e]" Plaintiffs' claim of injury "across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

---

[1] Plaintiffs in data security and privacy cases routinely plead the kinds of information disclosed (as they must), including the cases Plaintiffs cite. *See Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1192 (N.D. Cal. 2020) ("Plaintiffs have made specific, factual allegations pointing to 'enhanced' geocoordinate location information."); *Mehta v. Robinhood Fin. LLC*, 2021 WL 6882377, at *1-2 (N.D. Cal. May 6, 2021) (exposure of "sensitive personal and financial information" allegedly led to funds being looted); *Krottner v. Starbucks Corp.*, 628 F.3d 1139, 1140 (9th Cir. 2010) (unencrypted names, addresses, and social security numbers); *In re Adobe Sys., Inc. Priv. Litig.*, 66 F. Supp. 3d 1197, 1206 (N.D. Cal. 2014) (credit and debit card numbers, expiration dates, and other billing information); *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d 589, 603-05 (9th Cir. 2020) (analyzing the "sensitivity of [the] data" collected); *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 917 (S.D. Cal. 2020) (medical information).

1    Plaintiffs' responses are deficient for two other reasons. *First*, only six out of twenty-five
2 named plaintiffs allege suspicious activities. Opp. 3-4. This is inadequate. *See Oliver v. SD-3C*
3 *LLC*, 2015 WL 10890656, at *6 (N.D. Cal. Sept. 30, 2015) ("[a]t a minimum, Plaintiffs must allege
4 facts showing that each named Plaintiff has *personally suffered* an injury-in-fact"). Nor can they
5 rely on other conclusory, collective allegations regarding "the loss of privacy and the time, stress
6 and annoyance of dealing with the company's wrongful conduct" (Opp. 5). *See id.* ("a catch-all
7 allegation is insufficient to satisfy the Article III standing"); *I.C. v. Zynga, Inc.*, 2022 WL 2252636,
8 at *10 (N.D. Cal. Apr. 29, 2022) (declining to consider similarly vague allegations when the
9 complaint does not allege any plaintiff "actually experienced" those consequences). Plaintiffs'
10 own case (Opp. 3) says just that. *See Maddox v. Bank of N.Y. Mellon Tr. Co., N.A.*, 19 F. 4th 58,
11 66 (2d Cir. 2021) ("A perfunctory allegation of emotional distress, especially one wholly
12 incommensurate with the stimulant, is insufficient to plausibly allege constitutional standing.'").

13    *Second*, citing only the suspicious activities allegedly encountered by six of the named
14 plaintiffs, Plaintiffs argue that "[t]he damages Plaintiffs allege support that highly sensitive
15 information was stolen." Opp. 4. But that argument is backwards—it is the types of exposed PII
16 that dictate whether there is cognizable threat of future harm, not the other way around. *See*
17 *Greenstein v. Noblr Reciprocol Exch.*, 2022 WL 472183, at *3 (N.D. Cal. Feb. 15, 2022) ("The
18 Ninth Circuit identifies types of future harm in data breach cases based on the types of personal
19 information compromised.") (citing *Krottner*, 628 F.3d at 1143). The Complaint at most suggests
20 that Plaintiffs' names or email addresses were disclosed. Mot. 3. Plaintiffs have not credibly
21 alleged injury-in-fact directly traceable to the Security Incident, let alone any alleged misconduct
22 by Robinhood, and thus cannot satisfy their burden of showing standing. Instead, they point to
23 privacy issues that under the caselaw have no plausible connection to the limited information
24 allegedly exposed in the Security Incident, especially now that "[i]nformation is widely available
25 on the internet and [other] data breaches could reveal more personal information." *Greenstein*,
26 2022 WL 472183, *7; CAC ¶ 58 ("It is no secret that data breaches have become widespread.").[2]

27
28 [2] As Robinhood explained, caselaw in this district demonstrates that none of the alleged privacy issues confronted by the six named plaintiffs establishes standing. *See* Mot. 3-4. Plaintiffs brush off those cases as "clearly distinguishable because the data there did not present a sufficient threat

- 2 -   Defs' Reply iso Mot. to Dismiss CAC
Case No. 3:21-cv-08906-JD

1  The mere fact that some of the alleged activities occurred some time after the incident does not
2  help Plaintiffs when they "fail[] to allege a specific connection between the breach and the type of
3  data used in the application." *Greenstein*, 2022 WL 472183, at *7 (even if the data security
4  incident occurred months earlier, "it is possible that the data used for the fraudulent application
5  could have been obtained from a third-party or unrelated data breach"); *see also Zynga*, 2022 WL
6  2252636, at *2-3, *10 (similarly holding where suspicious activities allegedly happened as early
7  as within a month of the data security incident).

8        Plaintiffs' opposition cannot plug the fundamental hole in their pleadings: a plausible
9  allegation that they suffered any traceable injury from the disclosure of any sufficiently protectable
10  PII.  The Complaint should be dismissed.

11  **II.   EACH CLAIM SEPARATELY FAILS UNDER RULE 12(b)(6)**

12      **A.   Plaintiffs Fail To State A Negligence Claim (Counts I & II)**

13        Plaintiffs cannot get around the economic loss rule.  *First*, they cannot invoke other States'
14  law (Opp. 6) in this data security case because California is where the Complaint alleges
15  Robinhood was headquartered, and also where the injuries were allegedly caused (CAC ¶¶ 11, 37-
16  40).  *See Schmitt v. SN Servicing Corp.*, 2021 WL 3493754, at *4 (N.D. Cal. Aug. 9, 2021)
17  (collecting cases).  *Second*, under California law, Plaintiffs concede that, but for the "special
18  relationship" exception under *J'Aire Corp. v. Gregory*, 24 Cal. 3d 799, 804 (1979), their
19  negligence claim would be barred by the economic loss rule.  *Compare* Mot. 7 *with* Opp. 7.
20  Critically, the California Supreme Court recently confirmed in *Sheen v. Wells Fargo Bank, N.A.*
21  that the *J'Aire* test does not apply where, as here, the parties are in contractual privity (CAC ¶¶ 151,
22  156-157).  12 Cal. 5th 905, 936-43 (2022).  That is true regardless of whether the contract at issue
23  is for goods or services.  *See id.* at 914-15 (case arising from mortgage services); *see also Ace Am.*
24  *Ins. Co. v. Accellion, Inc.*, 2022 WL 2341155, at *1, *7 (N.D. Cal. Apr. 11, 2022) (following
25  *Sheen*).  None of Plaintiffs' pre-*Sheen* cases (Opp. 7) correctly reflects now-settled California law.[3]

26

27  of future identify theft." Opp. 5. But these cases prove Robinhood's point—Plaintiffs must allege
    the types of information disclosed to establish a threat of future harm, which they fail to do.
28  [3] Regardless, Plaintiff cannot satisfy the *J'Aire* multi-factor test because they fail to allege their
    alleged contract with Robinhood "was intended to specifically benefit [them] in a way separate

1    Plaintiffs' opposition arguments also fall short of salvaging the negligence claim. Plaintiffs' duty argument (Opp. 8) fails because it is premised on their baseless allegation that "highly sensitive information like social security numbers were stolen." *See* Mot. 8.  On damages, nineteen out of the twenty-five named plaintiffs fail to plead any damages at all, and the other six fail to plausibly allege they suffered any loss from the suspicious activities they purportedly encountered.  *Id.* at 9.  Plaintiffs cite *Mehta*, but there each named plaintiff alleged that their deposited funds were looted by the unauthorized actor.  *See* 2021 WL 6882377, at *1-2.  Plaintiffs' allegation of "lost time and costs," without specifying any out-of-pocket expenses (Opp. 8), is conclusory and insufficient to plausibly allege damages, *Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614 (9th Cir. 2021); *Greenstein*, 2022 WL 472183, at *6 (mitigation costs must be "reasonable and necessary") (citing cases).

On causation, Plaintiffs cite two cases where the court denied motions to dismiss the negligence claim, but those are easily distinguishable.  In *Mehta*, plaintiffs alleged specific facts connecting defendant's alleged misconduct and the types of information at issue ("sensitive personal and financial information"), as well as facts connecting the alleged data security incident and the alleged loss, 2021 WL 6882377, at *6; in *Stasi*, the court found plausible that plaintiffs' alleged lost time was caused by the data security incident because "it is reasonable to infer" that persons whose personal *and* medical information was posted online would "spend some time and/or effort to detect or prevent identity theft," 501 F. Supp. 3d at 915-16.  No similar allegations are made here, and the allegations in the Complaint indeed negate causation (Mot. 9).

Finally, because Plaintiffs' ordinary negligence claim fails (*supra* pp. 3-4), their *per se* "claim" fails, too.  *See, e.g.*, *Lobstein v. Wa. Mut. Mortg. Pass-Through Certificates WMALT*

---

from other customers" (Mot. 7-8) and thus fail to plead the "the most important" *J'Aire* factor, *Whitesides v. E*Trade Secs., LLC*, 2021 WL 930794, at *6 (N.D. Cal. Mar. 11, 2021).  Instead, they argue only two of the six factors—that "there is 'moral blame' ascribable to Robinhood's conduct" (fifth) and that "[r]ecognizing this claim furthers the policy of preventing future harms" (sixth).  Opp. 7.  But Plaintiffs do not allege that Robinhood "knew of [any] deficiency and failed to act" for the fifth factor, nor have they identified any compelling policy argument to go beyond the current data privacy regime under both the CCRA and the CCPA for the sixth factor. *Whitesides*, 2021 WL 930794, at *7.  The *J'Aire* test cannot be met.

1  *Series 2007-OC1*, 2020 WL 3964788, at *3 (C.D. Cal. June 8, 2020) ("'an underlying claim of
2  ordinary negligence must be viable' before [negligence *per se*] can be employed").

### B.  Plaintiffs Fail To State A Breach Of Contract Claim (Count III)

Plaintiffs do not plausibly allege causation *or* damages in connection with their contract claim. Mot. 9-10. Plaintiffs ignore causation and forfeit the argument, warranting dismissal for this reason alone.

On damages, Plaintiffs' reliance on *In re Facebook Privacy*, 572 F. App'x 494 (9th Cir. 2014) (Opp. 9), is misplaced because unlike the plaintiffs in *Facebook*, they fail to allege any harm caused by the exposure of their emails or names (*supra* pp. 2-4; Mot. 5). Plaintiffs are also wrong in asserting that "even an inability to show actual damages does not preclude recovery for breach of contract," which they claim can instead be based on nominal damages or disgorgement. Opp. 9. But even a claim for nominal damages requires "a legal wrong," that is, "the violation of a contractual right." *Meta Platforms, Inc. v. BrandTotal Ltd.*, 2022 WL 1990225, at *22 (N.D. Cal. June 6, 2022).[4] Plaintiffs also cannot rely on Robinhood's statement that it will protect users' information or that it will only disclose users' information in certain limited situations (Opp. 9-10). Neither of these two purported "promises" supports a breach of contract claim because, first, neither is supported by any consideration, and second, there is no promise on Robinhood's part to absolutely prevent unauthorized access to PII by a third party. Mot. 10. Plaintiffs offer no response to Robinhood's first argument and argue only that Robinhood's second argument was rejected in *Calhoun v. Google LLC*, 526 F. Supp. 3d 605 (N.D. Cal. Mar. 17, 2021). *See* Opp. 10. But unlike in *Calhoun*, where the defendant's alleged misconduct plainly violated the terms of the contract at issue, 526 F. Supp. 3d at 632, here, Plaintiffs fail to plausibly allege that Robinhood breached the alleged contract. The Complaint is devoid of any allegation establishing that Robinhood disclosed Plaintiffs' information to the "unauthorized third party" *or* how Robinhood failed to take reasonable security measures that plausibly led to the Security Incident.

---

[4] Plaintiffs fail to adequately plead disgorgement resulting from any unjust enrichment because they fail to allege that Robinhood received any benefit from the Security Incident and thus the alleged breach. Mot. 11.

### C. Plaintiffs Fail To State An Implied Contract Claim (Count IV)

Robinhood has provided four independent reasons why Plaintiffs' implied contract claim fails, including that Plaintiffs cannot distinguish their express contract claim from the incompatible implied contract claim and that Plaintiffs fail to allege the parties' conduct that formed the basis of the alleged implied contract. Mot. 10-11. Plaintiffs' only substantive response is that they "have presented the same conduct, causation, and injury as those plaintiffs in *In re Facebook Internet Tracking Litig.* and *In re Facebook Privacy Litig.*" Opp. 10 (citing 956 F.3d 589 (9th Cir. 2020) and 572 F. App'x 494 (9th Cir. 2014)). But neither case involved an implied contract claim—and indeed the first case affirmed dismissal of the express contract claim, 956 F.3d at 611.[5]

### D. Plaintiffs Fail To State An Unjust Enrichment Claim (Count V)

Plaintiffs' opposition confirms that their unjust enrichment claim encompasses the same subject matter as their breach of contract claim and therefore fails. Opp. 11 (arguing that "Plaintiffs and the Class Members conferred a monetary benefit on Robinhood by purchasing financial services through Robinhood and paying fees to Robinhood and that it profited from this, yet i[t] failed to adequately secure customers' PII"); *see* Mot. 11; *see also Gardiner v. Walmart, Inc.*, 2021 WL 4992539, at *8 (N.D. Cal. July 28, 2021) (collecting cases); *Frezza v. Google Inc.*, 2012 WL 5877587, at *3 (N.D. Cal. Nov. 20, 2012) (dismissing alternatively pleaded unjust enrichment claim that "is simply a reformulation of the contract claim"). This case is therefore distinguishable from *In re Google Location History Litig.* (cited at Opp. 11), where the plaintiffs' claim arose in part from Google's conduct that fell outside the parties' contractual relationship, 514 F. Supp. 3d 1147, 1160 (N.D. Cal. 2021).

### E. The California Plaintiffs Fail To State A UCL Claim (Count VII)

Robinhood showed (at Mot. 11) that both California Plaintiffs fail to plead their UCL standing. In response, the California Plaintiffs cite paragraph 103 of the Complaint (Opp. 12), but

---

[5] Plaintiffs also ask for "leave to amend to cure any deficiency in their [implied contract] claim," "should the Court find that no valid contract exists." Opp. 10. But Plaintiffs do not and cannot demonstrate how amendment could cure any of the four deficiencies mentioned in Robinhood's opening brief and left unaddressed in Plaintiffs' opposition. The Court therefore should reject Plaintiffs' request. *Yue v. Chordiant Software, Inc.*, 2008 WL 11141245, at *7 (N.D. Cal. June 24, 2008).

1   that paragraph contains no factual allegations except for a laundry list of types of injury.  Moreover,
2   to establish UCL standing, the California Plaintiffs must also allege "a causal connection or
3   reliance on the alleged misrepresentation."  *Flores-Mendez v. Zoosk, Inc.*, 2021 WL 4553772, at
4   *3 (N.D. Cal. Oct. 5, 2021).  They fail to do so and cannot evade this requirement by pleading
5   their UCL claims as omission-based.  *See, e.g.*, *Great Pac. Secs. v. Barclays Cap., Inc.*, 743 F.
6   App'x 780, 793 (9th Cir. 2018); *Turner v. Apple, Inc.*, 2022 WL 445755, at *5 (N.D. Cal. Feb. 14,
7   2022).  As noted in *Zoosk*, "[a]ll district court decisions that had green-lighted the causal
8   component of the *Kwikset* test," including the cases cited by Plaintiffs (Opp. 12), "involved
9   complaints with stronger allegations that the plaintiffs actually considered the misleading
10  statements before purchasing."  2021 WL 4553772, at *4 (citing *In re Anthem, Inc. Data Breach*
11  *Litig.*, 2016 WL 3029783 (N.D. Cal. May 27, 2016)).  Here, the California Plaintiffs do not allege
12  that they "knew of and considered" the alleged statements about Robinhood's privacy policy at
13  the time they became Robinhood users "either by reading the statement or because it appeared in
14  any of the materials [they] saw (binding terms of service, advertisements, etc.)."  2021 WL
15  4553772, at *4.  Nor do they "offer any other plausible method by which [they] would have
16  become aware of [Robinhood]'s alleged partial representations or omissions."  *Phillips v. Apple*
17  *Inc.*, 2016 WL 1579693, at *8 (N.D. Cal. Apr. 19, 2016).  Their allegations therefore fail to meet
18  this requirement.

19      Even if the California Plaintiffs had UCL standing, none of the three UCL prongs applies.
20      Plaintiffs' opposition (at 12-13) confirms that their unlawful prong claim is predicated
21  solely on their negligence (through the FTC Act), CCPA, and CCRA claims.  Because those claims
22  fail (*supra* II.A; *infra* II.F), the unlawful prong claim necessarily fails.  Mot. 11-12.

23      As for the fraudulent prong claim, the California Plaintiffs cannot plead around Rule 9(b)
24  by framing their UCL claims as omission-based.  *Steele-Klein v. Int'l Bhd. of Teamsters, Loc. 117*,
25  696 F. App'x 200, 203 (9th Cir. 2017); *Tabler v. Panera LLC*, 2020 WL 3544988, at *6 (N.D. Cal.
26  June 30, 2020).  In any event, as discussed, they have failed to plead sufficient facts to show
27  reliance.  The fraudulent prong claim also should be dismissed because the California Plaintiffs
28  have failed to adequately plead Robinhood's knowledge of any alleged misrepresentation or

omission—which Robinhood argued in its motion (Mot. 12), and Plaintiffs offer no meaningful response in their opposition (*see* Opp. 13) (citing only conclusory allegations).

Finally, the California Plaintiffs do not deny that their unfair prong UCL allegations overlap entirely with their allegations for the unlawful and fraudulent prongs. *See* Opp. 13. Because both the unlawful prong and the fraudulent prong fail, the unfair prong UCL claim cannot survive. Mot. 12-13. Moreover, the unfair prong claim does not meet any of the three tests. It fails the tethering test because it relies solely on the FTCA and therefore fails along with the unlawful prong claim. Opp. 13-14; Mot. 13. And because neither Fisher nor Glinoga has alleged any cognizable harm, their claim necessarily fails both the "substantially injurious" test, *Gardner v. Health Net, Inc.*, 2010 WL 11597979, at *11 (C.D. Cal. Aug. 12, 2010) ("it is not clear that Plaintiffs suffered any injury-in-fact, much less a 'substantial injury'") (cited at Mot. 13), *and* the balancing test, which requires balancing "the gravity of their injuries" against the utility of Robinhood's actions, *id.* On this claim, the California Plaintiffs cite only paragraphs 330 and 349 (Opp. 14), but those two paragraphs are irrelevant as they concern non-California Plaintiffs.

**F.  The California Plaintiffs Fail To State A CCRA Or CCPA Claim (Counts VIII & IX)**

The California Plaintiffs do not dispute that both the CCRA and the CCPA require businesses to safeguard only certain categories of information against unauthorized access. *Compare* Mot. 13 *with* Opp. 14. As with their standing argument (*supra* I.A), the California Plaintiffs cannot plausibly allege that the CCRA or the CCPA applies given their failure to plead the types of information at issue. Thus, neither *Mehta* nor *Stasi* helps them. *Supra* p.1 & n.1.[6]

The two claims should likewise be dismissed for the independent reason that the Complaint does not show or even support an inference that Robinhood failed to "implement and maintain reasonable security procedures and practices." Mot. 13-14. Plaintiffs cite only allegations relating to another security incident (Opp. 14), but those allegations carry no weight here because the

---

[6] The CCPA claim in *Stasi* was allowed to proceed because defendant forfeited the argument whether the non-medical information at issue was covered by the CCPA. 501 F. Supp. 3d at 924.

limited exposure of this Security Incident as alleged in the Complaint leads to the opposite inference—that Robinhood indeed had reasonable security practices in place (*see* Mot. 9).

### G. Plaintiffs' Non-California Statutory Claims All Fail (Counts X-XXIV)

Plaintiffs do not and cannot counter Robinhood's legal authority that requires them to plead various state law elements. *Compare* Opp. 14-15 *with* Mot. 14-15.[7]  Plaintiffs fail to plead these requisite elements as discussed. All the non-California state claims should be dismissed.

Plaintiffs are wrong in asserting that they "did allege … service of pre-suit notice." Opp. 15 n.8; *see* CAC ¶¶ 217-370 (no allegation of pre-suit notice). Counts XIV, XV, and XVII therefore fail to the extent they require pre-suit notice. Mot. 14.

Additionally, despite the plain language of the statutes, Plaintiffs assert that Counts XVI, XVII, and XX can be brought as putative class actions under *Shady Grove Orthopedic Assocs. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). Plaintiffs cite one earlier case from this district interpreting the South Carolina Unfair Trade Practice Act ("SCUTPA"). Opp. 15 n.9 (citing *Los Gatos Mercantile, Inc. v. E.I. Dupont de Namour & Co.*, 2015 WL 4755335 (N.D. Cal. Aug. 11, 2015)). But that case conflicts with the consistent holding by South Carolina federal courts that the SCUTPA's class-action prohibition is substantive and trumps Rule 23. *See Fejzulai v. Sam's W., Inc.*, 205 F. Supp. 3d 723, 725-29 (D.S.C. 2016). Plaintiffs further contend that *Los Gatos Mercantile*'s reasoning "can also be imported to" the other two state laws. Opp. 15 n.9. But Judge White recently confirmed that the *Shady Grove* analysis must be conducted on a statute-by-statute basis. *See Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 926-27 (N.D. Cal. 2019). These counts therefore should be dismissed because the statutes at issue all meet the three factors adopted in *Jones*, that is, each statute's class-action prohibition (1) applies only to that statute, (2) is incorporated in the same statutory provision as the underlying right, and (3) appears to reflect a

---

[7] That is, (1) all the data security statutes protect only limited categories of information; (2) for all these claims Plaintiffs must allege actual damages or injury or, for injunctive relief, that there is no adequate remedy at law; and (3) for certain claims they must also satisfy Rule 9(b) or allege other elements. Contrary to Plaintiffs' assertion (Opp. 15), there is a split on whether New Jersey's data security statute provides for a private right of action. *See Torres v. Wendy's Int'l, LLC*, 2017 WL 8780453, at *6 (M.D. Fla. Mar. 21, 2017) (N.J. Stat. § 56.8-163 "does not create a private right of action for citizens to enforce its provisions") (cited at Mot. 14 n.4).

policy judgment about managing the danger of duplicative recoveries. *Id.*

## III. PLAINTIFFS ARE NOT ENTITLED TO EQUITABLE RELIEF

Retrospective equitable relief is unavailable here because Plaintiffs have an adequate remedy at law—damages. *See* Mot. 6. Plaintiffs' argument that they can "plead[] in the alternative" (Opp. 11 & n.5) is either meritless, *Anderson v. Apple Inc.*, 500 F. Supp. 3d 993, 1009 (N.D. Cal. 2020) (*Sonner* prevents parties from pleading in the alternative), or irrelevant in light of the alleged availability of damages, *Capelak v. HP Inc.*, 2021 WL 5298022, at *2 (N.D. Cal. Nov. 15, 2021) (regardless of alternative pleading, plaintiffs must still "plead the basic requisites of the issuance of equitable relief") (cleaned up).

Prospective equitable relief is equally unavailable. Plaintiffs fail to explain how their claims of irreparable harm could be reconciled with their request for monetary damages "based on the same facts." *Compare* Mot. 6 (citing *Bohnak v. Marsh & McLennan Cos., Inc.*, 2022 WL 158537, at *6 (S.D.N.Y. Jan. 17, 2022)) *with* Opp. 6. Plaintiffs cite paragraphs 90 to 103 of the Complaint (Opp. 6), but those discuss claimed injuries allegedly caused by a data security incident that already occurred in the past. *See Greenstein*, 2022 WL 472183, at *8 ("[i]njunctive or declaratory relief would not be able to redress any future harm of identity theft or fraud"). Nor can the research mentioned in paragraph 86 (Opp. 6)—ostensibly showing that "in some cases, stolen data may be held for up to a year or more before being used to commit identity theft"—save Plaintiffs' deficient pleading, as it fails to link this conclusion to the types of information at issue here. *Greenstein*, 2022 WL 472183, at *4 (rejecting request for equitable relief, noting "[t]o find a credible risk of future identity, this Court would need to speculate as to whether a third-party, with Plaintiffs' names [or email addresses], could commit extensive identity theft."). Last, Plaintiffs "cannot show any imminent risk of future harm from *this* data breach," let alone any "real or immediate threat that [they] will be wronged again" by another speculative, future data security incident. *Zynga*, 2022 WL 2252636, at *12; *see also Thomas v. Kimpton Hotel & Rest. Grp., LLC*, 2020 WL 3544984, at *4 (N.D. Cal. June 30, 2020).

## **CONCLUSION**

For these reasons, the Court should dismiss the CAC in its entirety.

|   |   |
|---|---|
| | Respectfully submitted, |
| Dated: August 26, 2022 | WILMER CUTLER PICKERING HALE AND DORR LLP |
| | By:  */s/ Alan Schoenfeld* |
| | Michael Bongiorno (*pro hac vice*) |
| | Alan Schoenfeld (*pro hac vice*) |
| | Allison Que |
| | *Attorneys for Defendants Robinhood Markets, Inc., Robinhood Crypto, LLC, Robinhood Financial LLC, Robinhood Securities, LLC* |

### CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2022, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

Dated: August 26, 2022                               By:   */s/ Alan Schoenfeld*
                                                                  Alan Schoenfeld